IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**v.**                                                                                                               **11-cv-0416 JB/SMV**

**MARK HOPKINS, et al.,**

    **Defendants.**

**<u>ORDER ON MOTIONS FOR EXTENSION OF TIME TO COMPLETE DISCOVERY</u>**

THIS MATTER is before the Court on four related motions: (1) Defendant[ Mark Hopkins'] Motion to Expand Time to Complete Discovery [Doc. 99], filed on August 16, 2012; (2) [Mark] Hopkins' Motion to Request Leave of the Court to Correct Error [Doc. 108], filed on September 14, 2012; (3) [Mark] Hopkins' Supplemental Request for Discovery through Interrogatories [Doc. 109], filed on September 14, 2012; and (4) [Mark Hopkins'] Motion for Leave of Court to Cure Defect and Acquire Discovery by Deposition through Subpoena with Expansion of Time [Doc. 117], filed on October 12, 2012. A hearing was held on the motions on December 10, 2012. Clerk's Minutes [Doc. 138]. For the reasons cited herein, the Court, being fully advised in the premises, will deny [Docs. 99, 108, and 117] and grant in part and deny in part [Doc. 109]. Discovery will not be extended or reopened, but the United States will be ordered to answer Interrogatories 7–19 as though they had been properly propounded on the United States.[1]

---

[1] In response to the Court's oral rulings at the hearing on December 10, 2012, *see* Clerk's Minutes [Doc. 138], the government filed its certificate of service that on December 28, 2012, it had served responses to Interrogatories 7–19 on Defendant. [Doc. 144].

## I.  Background

Defendant was convicted of tax evasion on September 29, 2010.[2]  The United States brought this action to reduce to judgment the outstanding tax assessments against Defendant and his wife, and to recover the unpaid federal taxes, penalties, and interest assessed against them. *See* United States' Complaint [Doc. 1].  Defendant is currently incarcerated and proceeding pro se.  Judge Browning ordered the parties to provide their initial disclosures by January 23, 2012.  Clerk's Minutes [Doc. 42] at 2.  The Government provided its initial disclosures on January 13, 2012. [Doc. 108] at 1.  The initial disclosures included the names of persons likely to have discoverable information but did not include their addresses or phone numbers. [Doc. 108] at 1.

In interrogatories postmarked March 12, 2012, [Doc. 62] at 2, Mr. Hopkins requested, among other things, a list of the names of the IRS agents who had authored certain Notices of Deficiencies for the tax years at issue, as well as their contact information.  [Doc. 60] at 14; [Doc. 108] at 2.  The government responded to the interrogatories on April 19, 2012.  [Doc. 99] at 2.  However, the government did not identify the agents nor provide their contact information. Instead, relying upon Fed. R. Civ. P. 33(d), the government simply referred to certain documents that had been admitted as exhibits in Defendant's criminal trial.[3]  [Doc. 60] at 14.

---

[2] *See United States v. Mark Hopkins and Sharon Hopkins*, Case No. 09-cr-00863 MCA (D.N.M.).

[3] Rule 33(d) provides:

> (d) Option to Produce Business Records. If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:

On May 14, 2012, Mr. Hopkins wrote a 32-page letter to counsel for the United States, asking, *inter alia*, for hard copies of the exhibits and for the IRS agents' contact information. [Doc. 99] at 3. With respect to his request for hard copies, Defendant stated:

> I would ask you to send me a CD with the discovery, but due to BOP/DOJ policy toward inmates, I am not allowed to receive CDs due to security reasons. Even if I could receive one, there are no computers nor printers to access and copy the material, and the [prison's] policy is not to assist an inmate in any civil proceeding. [I therefore] request that the Plaintiff produce all requested documents in the form of hard copies . . .

Motion to Extend Time [Doc. 60] at 22.

On May 24, 2012, Mr. Hopkins moved for an extension of 90 days from the discovery deadline of June 15, 2012, in order to "allow for interrogatories and depositions of the witnesses yet to be determined once the Plaintiff has complied with the discovery." [Doc. 99] at 3. By June 4, 2012, Mr. Hopkins had heard nothing from the government. *Id*. Accordingly, on June 5, 2012, he filed a motion to compel the government to respond to his discovery and to extend the discovery deadline. [Doc. 99] at 3–4. On June 7, 2012, before a hearing was set on the motion to compel, the government provided Defendant with hard copies of all documents identified in its response to Defendant's discovery requests. Response [Doc. 62] at 1.

---

> (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and
>
> (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

It is unclear from the record before me whether the information requested—specifically the names, addresses, and phone numbers of the authors of the Notices of Deficiency—was actually contained in the documents to which the government referred. However, and to the government's credit, its responses did refer to the documents specifically by Bates number, rather than simply saying, "See the exhibits introduced at your criminal trial." The references to specific, Bates-numbered documents suggest to me that the information was, in fact, contained in the documents referred to.

Judge Browning held a hearing on the motion to compel and the motion to extend discovery on July 24, 2012. [Doc. 90] at 1. At the hearing, the United States agreed to provide the agents' addresses and phone numbers to Defendant by close of business on July 31, 2012. [Doc. 90] at 2. Thus, Judge Browning denied the motion to compel without prejudice to refile if the government did not provide the contact information as agreed. MOO [Doc. 142] at 7. He also extended discovery by an additional 45 days, which moved the discovery deadline to September 7, 2012. Minute Order [Doc. 100]. Judge Browning cautioned Defendant to use the additional time "judiciously." [Doc. 90] at 3.

On July 31, 2012, the United States served its second set of supplemental disclosures, providing the agents' contact information. [Doc. 108] at 2. The disclosure included information for six agents who testified at Mr. Hopkins' criminal trial but did not include information on two retired agents. [Doc. 99] at 5–6. As of December 10, 2012, Mr. Hopkins had not contacted counsel for Plaintiff regarding the scheduling of any depositions. Clerk's Minutes [Doc. 138] at 3.

## II.   Analysis

The four pending discovery motions arise from Mr. Hopkins' repeated efforts to obtain certain information as to the IRS's determination that he owed back taxes. Clerk's Minutes [Doc. 138] at 2. He argues that the information is necessary to his defense that the IRS did not follow its own rules in determining his tax liability. *Id.* The four motions reflect the evolution of Mr. Hopkins' attempts to obtain the information: from the agents directly, then from the agents via the government, and finally from the agents via deposition on written question. The government resisted each attempt on various procedural grounds.

First, Mr. Hopkins filed a motion to extend the discovery deadline in order to propound interrogatories and requests for production on the non-party, individual IRS agents. [Doc. 99]. Of course, as Mr. Hopkins had been informed by Judge Browning, non-parties are not subject to such requests. [Doc. 90] at 2. Nevertheless, Mr. Hopkins insisted that he was allowed to propound the requests on the individual agents directly. [Doc. 108] at 4. He then filed a second motion, asking, in the alternative, that the Court deem the discovery requests served on the United States "for the identified IRS agents." [Doc. 108] at 5. His third filing was a "supplemental request for discovery," in which he "rout[ed] the enclosed interrogatories [and requests for production] through the US Attorney's Office to the designated IRS Agents." [Doc. 109] at 2. The Court sees no substantive difference between the second and third motions. Finally, the fourth motion asks the Court to grant Mr. Hopkins permission to depose the IRS agents upon written question and for an extension of time to do so. [Doc. 117].

"Discovery plays an important role in our adversarial system: full development of the facts surrounding a matter furthers 'the purpose discovery is intended to serve—advancing the quest for truth.'" *Trujillo v. Bd. of Educ. of Albuquerque Pub. Schs.*, Nos. 02-1146 and 03-1185, 2007 WL 1306560, at *2 (D.N.M. Mar. 12, 2007) (Browning, J.) (unpublished) (quoting *Taylor v. Illinois*, 484 U.S. 400, 430 (1988)). "Discovery is also, ideally, a self-executing system. A spirit of cooperation between opposing counsel is thus important and generally results in the filing of fewer discovery motions, reduction in the costs of litigation, and conservation of limited judicial resources. Sometimes, though, the discovery system breaks down." *Mann v. Fernandez*, 615 F.Supp.2d 1277, 1284 (D.N.M. 2009) (Browning, J.).

Although the district court has "wide discretion" to regulate pretrial matters, *Sil-Flo, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1514 (10th Cir. 1990), scheduling deadlines "may be modified only for good cause and with the judge's consent," Fed. R. Civ. P. 16(b)(4). The advisory committee further observed:

> [T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension. Since the scheduling order is entered early in the litigation, this standard seems more appropriate than a "manifest injustice" or "substantial hardship" test. Otherwise, a fear that extensions will not be granted may encourage counsel to request the longest possible periods for completing pleading, joinder, and discovery.

Fed. R. Civ. P. 16(b)(4) advisory committee's note to 1983 amendment. "Good cause" and "excusable neglect" are interrelated:

> Without attempting a rigid or all-encompassing definition of "good cause," it would appear to require *at least* as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice, and some showing of "good faith on the part of the party seeking the enlargement *and* some reasonable basis for noncompliance within the time specified" is normally required. The district court is clearly not compelled to accept a lesser "excusable neglect" showing.

*Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 301 (D. Kan. 1996) (quoting *Broitman v. Kirkland*, 86 F.3d 172, 175 (10th Cir. 1996)). Therefore, "'[g]ood cause' requires a greater showing than 'excusable neglect.'" *Id.* (internal citation omitted).

In determining good cause, courts look at the diligence of the moving party:

> "The 'good cause' standard primarily considers the diligence of the party" . . . The party seeking an extension must show that despite due diligence it could not have reasonably met the scheduled deadlines. "Carelessness is not compatible with a finding of

6

> diligence and offers no reason for a grant of relief." The lack of prejudice to the nonmovant does not show "good cause."

*Id.* (quoting *Deghand v. Wal-Mart Stores, Inc.*, 904 F. Supp. 1218, 1221 (D. Kan. 1995)).

In the same vein, courts look at several factors when deciding whether to reopen discovery.

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

*Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987).

Based on the facts and circumstances of this case, I find that an extension of discovery is not warranted. Trial is set for February 11, 2013, less than two months away. Minute Order [Doc. 130]. The government adamantly opposes any extension of discovery and would be prejudiced by an extension because trial is imminent and motions for summary judgment are fully briefed. Mr. Hopkins has known since at least February of 2012, when he attempted to serve his first set of interrogatories on the United States, that he wanted certain information. Lack of time to conduct discovery did not hinder Mr. Hopkins. Instead, it was Mr. Hopkins' own failure properly to pursue the information that hindered him. Thus, of the six factors enumerated in *Smith*, five militate against extending discovery. (The government has not argued that the discovery is not likely to lead to relevant evidence.)

Most importantly, Mr. Hopkins' efforts have been misplaced, and he has not been diligent in seeking the information *via permissible avenues*. Judge Browning already granted Mr. Hopkins a 45-day extension and cautioned him to use it "judiciously." [Doc. 90] at 3;

[Doc. 142] at 7.  Although Mr. Hopkins has arguably been diligent—or at least dogged—in attempting to obtain the information that he desires, he has made no effort whatsoever to schedule the depositions he claims to need.  His request for depositions on written question was served after the already extended discovery deadline.  *See* [Doc. 117] at 1 (filed on October 12, 2012, making request more than a month after the deadline).  His efforts have been focused on obtaining the information via impermissible avenues, namely serving discovery requests on the agents directly.  Mr. Hopkins knew that the agents were not subject to direct discovery requests because Judge Browning told him so.  [Doc. 90] at 2.  Nevertheless, Mr. Hopkins stayed the futile course.  After applying the *Smith* factors, I find that no extension or reopening of discovery is warranted.

However, while it is not the Court's function to assume the role of advocate for a pro se litigant, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), I must recognize that Mr. Hopkins' ability to conduct discovery has been constrained by his incarceration.  This is not a situation in which a party sits back, does nothing until the discovery deadline approaches, and then at the last moment asks to have the deadline extended.  Although many of Mr. Hopkins' efforts at discovery have been misguided, he has at least made the effort.  Moreover, I find that Interrogatories 7–19 are reasonably calculated to lead to the discovery of admissible evidence.  *See* Fed. R. Civ. P. 26(b)(1).  Had this situation (i.e., interrogatories served upon the wrong party) occurred in a case in which both sides were represented, I am certain it would have been resolved informally between the attorneys.  The attorney serving the interrogatories would have asked the attorney representing the proper party to consider them as having been served upon his client, and no doubt that attorney would have agreed (with perhaps an agreement on an extension

of time to respond). In this case, the proper party (the government), had the interrogatories, had the requested information, and knew it was the party that should have been served. It could have answered the interrogatories, saving everyone a great deal of time, although it was not obligated to do so under the Rules of Civil Procedure. Instead the United States "played tough," *see* [Doc. 142] at 12, which it had the right to do. In any event, because I find that the interrogatories are reasonably calculated to lead to the discovery of admissible evidence, and because Mr. Hopkins made some reasonable, though incorrect, efforts to serve them on the proper party, I find good cause to order the government to answer Interrogatories 7–19 as though they had been properly propounded and served on the United States. *See* Fed. R. Civ. P. 26.1 ("For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.").

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Defendant[ Mark Hopkins'] Motion to Expand Time to Complete Discovery [Doc. 99] is **DENIED**.

**IT IS FURTHER ORDERED** that [Mark] Hopkins' Motion to Request Leave of the Court to Correct Error [Doc. 108] is **DENIED.**

**IT IS FURTHER ORDERED** that [Mark] Hopkins' Supplemental Request for Discovery through Interrogatories [Doc. 109] is **GRANTED IN PART and DENIED IN PART**. Discovery will not be extended, but the United States shall answer Interrogatories 7–19 as though they had been properly propounded on the United States.

**IT IS FURTHER ORDERED** that [Mark Hopkins'] Motion for Leave of Court to Cure Defect and Acquire Discovery by Deposition through Subpoena with Expansion of Time [Doc. 117] is **DENIED**.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**