# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                  No. CIV 11-0416 JB\WPL

MARK HOPKINS; SHARON HOPKINS;
and STATE OF NEW MEXICO REVENUE DEPARTMENT,

      Defendants.

## <u>MEMORANDUM OPINION</u>[1]

**THIS MATTER** comes before the Court on Hopkins' Motion for Relief from Order [Doc #164], filed February 27, 2013 (Doc. 167)("Motion"). The Court denied the Motion, filed by the Defendants Mark Hopkins and Sharon Hopkins ("the Hopkins'") in an Order, filed September 15, 2014 (Doc. 175)("Order"). The primary issue is whether the Court should modify its Memorandum Opinion and Order, filed February 14, 2013 (Doc. 164)("SJ MOO"), granting summary judgment in favor of Plaintiff United States of America against Defendants Mark Hopkins and Sharon Hopkins, based on excusable neglect resulting in a mistake of fact as to the amount for which Defendant Mark Hopkins ("M. Hopkins") is indebted to the United States. The primary issues which the Court addresses in the SJ MOO are:

> (i) whether Plaintiff United States of America may reduce to judgment the outstanding tax assessments for tax years 1996, 1997, 1999, 2000, and 2001

---

[1]The Court previously issued an Order that denied the Hopkins' Motion for Relief from Order [Doc #164], filed February 27, 2013 (Doc. 167)("Motion"). <u>See</u> Order, filed September 15, 2014 (Doc. 175)("Order"). In the Order, the Court stated that it might issue a Memorandum Opinion more fully detailing its rationale for this decision. <u>See</u> Order at 1 n.1. This Memorandum Opinion is the promised opinion that details the Court's rationale for the previous Order denying the Motion.

against Defendants Mark Hopkins and Sharon Hopkins, who were convicted of tax evasion for these same years in the United States' case against them, United States v. Mark E. Hopkins and Sharon J. Hopkins, No. CR 09-0863 MCA (D.N.M.); and (ii) whether the United States is entitled to foreclosure on its federal tax liens encumbering the Hopkins' interest in certain real properties located in Eddy County, New Mexico, in partial satisfaction of their tax liabilities owed to the Internal Revenue Service ("IRS").

SJ MOO at 1-2. The Court granted the Hopkins' Motion for Surreply and their Defendants' Motion for Telephonic Appearance Re: Motion Hearing on January 3, 2013, "for the reasons stated on the record at the hearing." SJ MOO at 2. Concluding that there were no genuine issues of material fact, and that the United States was entitled to judgment as a matter of law, the Court granted in part and denied in part the United States' Motion for Summary Judgment, filed July 16, 2012 (Doc. 66)("SJ Motion"). See SJ MOO at 2. The Court concluded that the Hopkins' "have a liberty interest in their right to engage in the common occupation of their choosing, pursuant to Article I, section 8 and the Sixteenth Amendment of the United States Constitution," and concluded that "Congress constitutionally can tax the Hopkins' income from the exercise of that right . . . and has not specifically exempted, excepted, or excluded the Hopkins' income from taxation under the Internal Revenue Code . . . ." SJ MOO at 2. Accordingly, the Court concluded that the Hopkins' income from their labor is not exempted from taxation. See SJ MOO at 2. The Court concluded that, in the criminal case against the Hopkins', establishing that the Hopkins' owed the United States a "substantial amount of tax" and that the Hopkins' used "nominees and/or alter-egos to shelter their income from the United States to evade taxes," was necessary to the jury's verdict that the Hopkins' were guilty of Criminal Tax evasion for tax years 1996-1997, and 1999-2001. SJ MOO at 2. The Court concluded, therefore, that res judicata

prevents the Hopkins' from relitigating those issues in the civil case against them.   See SJ MOO

at 2.   The Court concluded that:

> [b]ecause the record establishes that there is no genuine dispute whether
> the IRS assessments underlying the IRS' federal tax liens on which they seek to
> foreclose are valid and accurate, and there is no material dispute whether the
> Hopkins used the Defendants Grace Trust, Shalom Enterprises, Inc., and House
> of Royale, Inc. as their nominees or alter-egos to shield their assets from the IRS,
> there is no genuine dispute that the United States is entitled to foreclose on its
> liens against the subject property and is entitled to summary judgment as a matter
> of law.   Because the United States has agreed with Defendant Bayview Loan
> Servicing, LLC, that they will equitably divide profits from the sale of Tract #1,
> the Court denies the United States' Summary Judgment to the extent it seeks the
> Court to declare that its interest in Tract #1 is prior and superior to any other
> interest in the property.

SJ MOO at 2-3.   Granting summary judgment in favor of Plaintiff United States of America

against Defendant Mark Hopkins, the Court ordered that "M. Hopkins is indebted to the United

States for $732,811.61, as of October 19, 2010, for the federal income taxes assessed against him

for the tax years 1996, 1997, 1999, 2000 and 2001, plus interest and all statutory additions provided

by law until paid.".   SJ MOO at 100.   The Court also ordered that, granting summary judgment

in the United States' favor against Defendant Sharon Hopkins, "S. Hopkins is indebted to the

United States for $123,670.98, as of October 19, 2010, for the federal income taxes assessed

against her for the tax years 1996 and 1997, plus interest and all statutory additions provided by

law until paid.".   SJ MOO at 100.   The Court remains persuaded that its SJ MOO ruling is

appropriate. Accordingly, the Court will not alter its prior ruling. Consequently, the Court will

deny the Motion.

## FACTUAL BACKGROUND

The Court recites the factual background as stated in the SJ MOO. The footnotes

associated with the quoted text -- footnotes 2-6 -- are also quoted in full from the SJ MOO. The

SJ MOO stated:

> In support of its motion, the United States relies on specific pleadings, admitted
> United States exhibits, and trial transcripts from the Hopkins' criminal case,
> United States v. Hopkins.[2] Additionally, the United States relies upon a
> declaration and its IRS exhibits. Finally, the United States relies upon the
> following undisputed facts:[3]
>
> ### 1. Federal Income Tax Liabilities and Liens Against Hopkins.
>
> M. Hopkins worked as an emergency room physician and earned significant
> income. Before 1996, the Hopkins filed federal income tax returns and incurred

[2]The United States filed concurrently with its Motion for Summary Judgment a Brief in Support of the motion, exhibits, and an Appendix, and incorporates all of these documents by reference into its SJ Motion. See United States' Brief Supporting its Motion for Summary Judgment at 1, filed July 16, 2012 (Doc. 66-1)("MSJ Brief"). In the Appendix are specific pleadings, admitted United States exhibits, and trial transcripts in the Hopkins' criminal case. A declaration and the United States' IRS exhibits are also in the Appendix. Specifically, the United States included copies of specific pleadings and exhibits in the Hopkins' criminal case. The United States incorporates the allegedly undisputed facts and documents in the Appendix into its Brief. The Court will term those pleadings as "Hopkins Crim. Doc."; exhibits admitted into evidence at the Hopkins' criminal case are termed "Hopkins Crim. Gov. Ex."

[3]Although the Hopkins disagree with the United States almost entirely in their opposition to the United States' Motion for Summary Judgment, at the hearing on the Motion for Summary Judgment, the Hopkins clarified that their disagreement is a legal disagreement rather than a factual one. The Hopkins stated that their disagreement with the United States' facts that the United States sets forth as undisputed is "that [the United States] ha[s] limitations and [] can tax [only] what [it] ha[s] authority over" and that the United States does not have the authority to tax the "fundamental right to work." Transcript of Trial at 39:13-24 (taken January 3, 2012)(M. Hopkins)("Tr.")(the Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version; any final transcript may contain slightly different page and/or line numbers.). The Hopkins conceded that "if we are not exempt everything Mr. Lena [counsel for

tax debt that they failed to pay fully. See IRS Notices of Tax Liens, Hopkins Crim. Gov. Ex. 39, filed July 16, 2012 (Doc. 69-1). In 1996, the Hopkins took steps to avoid liability and payment. They met and consulted with several individuals and groups that advocate recognized tax protestor arguments and tactics, and made multiple library visits.

In 1997, M. Hopkins filed an "Affidavit of Citizenship and Domicile" with the Chaves County, New Mexico, Clerk, stating that he is a citizen of the "Texas Republic," is a nonresident alien of the United States, and is not required to pay federal income tax. M. Hopkins' Affidavit of Citizenship and Domicile, Hopkins Crim Gov. Ex. 35, filed July 16, 2012 (Doc. 69-2). S. Hopkins filed a similar document. See S. Hopkins' Affidavit of Citizenship and Domicile, Hopkins Crim Gov. Ex. 36, filed July 16, 2012 (Doc. 69-3).

The Hopkins asserted to the IRS that their compensation for labor earned was not income subject to federal income tax. See, e.g., Hopkins' 1996 Form 1040, Hopkins Crim. Gov. Ex. 152, filed July 16, 2012 (Doc. 69-4). In furtherance of their arguments, the Hopkins filed a joint federal income tax "return" that listed "zero income" for tax year 1996, while attaching W-2's showing M. Hopkins' wages as $81,000.00 and S. Hopkins' wages as $9,000.00. Hopkins' 1996 Form 1040. The Hopkins' Form 1040, filed jointly, for tax year 1996 reported "0" income, and attached letters and documents to support their tax positions. See Hopkins' 1996 Form 1040 at 5. Hopkins altered the jurat, and attached three signed statements containing tax protest language: "Affidavit of Claims for Exemption and Exclusion from Gross Income of Remuneration, Wages and Withholding," "Affidavit of Citizenship and Domicile," and "Contract and Declaration of Citizenship." Hopkins' 1996 Form 1040 Attachments, Hopkins

_____

the United States] has said is correct." Tr. at 39:4-6 (M. Hopkins). The Court responded:

> What I'm hearing is that we really don't need a trial on any issue, there's no genuine issue of material fact, but there's a legal issue that you're raising that you want the court to determine. Am I understanding your position correctly . . . . I'm not hearing there's really a dispute about the facts. What there's a dispute about is the validity of the assessment from a legal standpoint. Am I -- Is that a correct assessment of your argument?

Tr. at 44:9-19 (Court)(emphasis added). The Hopkins responded: "That's correct, Your Honor." Tr. at 44:20 (M. Hopkins). The facts that the United States set forth in its United States' Brief Supporting its Motion for Summary Judgment, filed July 7, 2012 (Doc. 66-1)("MSJ Brief"), are therefore largely, if not completely, undisputed. Where the Hopkins nevertheless continued to dispute a fact on other than the legal grounds that their labor is exempt from taxation at the hearing, however, the Court considers the fact disputed and determines whether there is a genuine issue of material fact in the footnotes in this factual background section.

Crim. Gov. Ex. 152, filed July 16, 2012 (Docs. 69-5 and 69-6). Statements attached to the Hopkins 1996 tax return stated: "The income tax is voluntary. We do not wish to volunteer." Hopkins' 1996 Form 1040 Attachments at & 8, at 6. Also, the Hopkins stated: "We are natural born sovereigns, preamble, de jure Citizen of one of the 50 sovereign Republic, freely associated compact American states." Hopkins' 1996 Form 1040 Attachments at & 5, at 9. The Hopkins stated that they were sovereign citizens of one of the fifty states, were "not citizen[s] of the United States," and were "not subject to jurisdiction of the United States," and filed a "Notice of Election to Terminate U.S. Taxpayer Status" and a "Declaration of Independence." Hopkins Crim. Gov. Ex. 270, filed July 16, 2012 (Docs. 70, 70-1, 70-2, and 70-3); Hopkins Crim Gov. Ex. 37, filed July 16 2012 (Doc. 70-4).

As part of their activities designed to avoid the IRS receiving any of their income for their tax liabilities, the Hopkins set up nominees including two trust -- Guadalupe Medical Service Trust ("GMST") and Grace Trust -- and corporate shells -- Shalom Enterprises, Inc. and House of Royale, Inc. Shalom Enterprises is an Oregon corporation, whose officers were M. Hopkins and S. Hopkins. House of Royale is a Nevada corporation, whose only officer was S. Hopkins. See Default Judgment Against Defendants House of Royale, Inc. and Shalom Enterprises, Inc. at 1-2, filed December 7, 2011 (Doc. 36)(ordering, adjudging and decreeing that House of Royale and Shalom Enterprises are "nominee[s]/alter ego[s] of Mark Hopkins and Sharon Hopkins").

Hopkins instructed the hospitals or physician staffing groups for which he worked to send his earnings directly to GMST and, later, to Shalom Enterprises. Trans-Mountain Emergency Physicians Group decided to honor an IRS levy for the Hopkins' unpaid income taxes that seized his May 1997 paycheck. M. Hopkins protested, saying his income was exempt. The Trans-Mountain Group's Chief Executive Officer rejected that argument, and M. Hopkins quit. See Hopkins Crim. Doc. 340; Crim. Trial Tr. at 555-560 (Sept. 23, 2010)(Dr. Beohm), filed July 16, 2012 (Doc. 71-5). The Hopkins used these nominee entities for their personal living expenses or transferred funds to other nominees, including Grace Trust and House of Royale. See Mark & Sharon Hopkins, Checks & Cash Written Between Nominee Bank Accounts, Hopkins Crim. Gov. Exs. 313, 314, filed July 16, 2012 (Docs. 71 and 71-1).

Based in part on law that zero returns are not legally considered to be tax returns, see United States v. Rickman, 638 F.2d 182, 184 (10th Cir. 1980)(holding that a tax return asserting that a taxpayer had zero income is not a valid return), the IRS disregarded the Hopkins' return and assessed the couple a frivolous filing penalty of $500.00, see Hopkins Crim. Doc. 340; Crim. Tr. at 625 (Sept. 23,

2010)(Sigler).[4]   Hopkins appealed the penalty based on the same arguments that they had made earlier.   Despite IRS correspondence and contact, the Hopkins refused to correctly file their 1996 federal income tax return and never filed another income tax return.   See Hopkins' Form 4340s, Hopkins Crim. Gov. Exs. 102-103, 105-107, 117-118, filed July 16, 2012 (Docs. 72, 72-1, 72-2, 72-3, 72-4, 73, and 73-1).

To discover the Hopkins' income and assets, the IRS commenced its investigation and audit that included third-party summons of bank records, financial and legal documents, third parties' Form 1099s, and witness interviews.   Reviewing the bank deposits, related financial documents and the Form 1099s, the IRS prepared substitutes for return on the Hopkins' behalf, and sent audit results for tax years 1996, 1997, 1999, 2000, and 2001 to the Hopkins.   See Hopkins Crim. Gov. Exs. 190-195, filed July 16, 2012 (Docs. 73-2, 73-4, 77, 74-1, 74-2, 74-3, 75, 75-1, 75-2, 75-3, 75-4, 75-5, 75-6, 76, 76-1, and 76-2).   The IRS sent notices of deficiency ("NODs") to both M. Hopkins and S. Hopkins for each of the years at issue.   See Hopkins Crim. Gov. Ex. 193 at 6; Hopkins Crim. Gov. Ex. 194 at 16; Hopkins Crim. Gov. Ex. 195 at 16; Hopkins Crim. Gov. Ex. 207.   In response to the NODs for 1996 and 1997, the Hopkins asserted, through their representative, that they had not filed returns or submitted to jurisdiction, and therefore had no income subject to tax.   See Letter from John B. Kotmair Jr. Re: Notice of Deficiency to

_____

[4]In addition to the United States Court of Appeals for the Tenth Circuit's opinion in United States v. Rickman, the Tenth Circuit, in deciding the Hopkins' appeal of their sentences in their criminal case, noted that the Hopkins' tax returns were "frivolous."   United States v. Mark E. Hopkins and Sharon J. Hopkins, No. 11-2114, Order and Judgment, at *37 (10th Cir. Feb. 5, 2013), filed in this civil case February 6, 2013 (Doc. 162-1).   Rule 32.1 of the Tenth Circuit's Rules of Appellate Procedure provides:

> **Precedential value.**   The citation of unpublished decisions is permitted to the full extent of the authority found in Fed. R. App. P. 32.1.   Unpublished decisions are not precedential, but may be cited for their persuasive value. They may also be cited under the doctrines of law of the case, claim preclusion, and issue preclusion. Citation to unpublished opinions must include an appropriate parenthetical notation. E.g., United States v. Wilson, No. 06-2047, 2006 WL 3072766 (10th Cir. Oct. 31, 2006) (unpublished); United States v. Keeble, 184 F. App'x. 756 (10th Cir. 2006)(unpublished).

10th Cir. R. 32.1(A).   Under the doctrine of issue preclusion, the Tenth Circuit's finding that the Hopkins' tax returns were frivolous is thus binding on the Hopkins' civil case here. See In re Corey, 583 F.3d 1249, 1251 (10th Cir. 2009)("The doctrine of issue preclusion prevents a party that has lost the battle over an issue in one lawsuit from relitigating the same issue in another lawsuit.").   The Court concludes, therefore, that the Hopkins' tax returns that reflected "0" income were invalid and frivolous.

James Walsh, IRS District Director (dated Sep. 5, 2000), Hopkins Crim. Gov. Ex. 208, filed July 16, 2012 (Doc. 76-4).

A delegate of the Secretary of Treasury assessed against, and gave notice and demand to, the Hopkins for unpaid income taxes, penalties, statutory additions, and interest for tax years 1996, 1997, 1999, 2000, and 2001.  See Hopkins' Form 4340s, Hopkins Crim. Gov. Exs. 102, 103, 105-107, 117, 118.  To date, the Hopkins have neglected, failed, and refused to pay the full amount of the federal income tax assessments for these years.  Hopkins Crim. Ex. 315, filed July 16, 2012 (Doc. 77), shows that IRS computer transcripts stated the tax liabilities in the amount of $732,811.61 that M. Hopkins owes under Count Two of the Indictment as of October 19, 2010 -- the time of his criminal trial.  See Hopkins Crim. Ex. 315.  The table below shows the tax period, the assessment date, the amounts assessed, and the total liabilities that M. Hopkins owes for these periods to October 19, 2010.

| TAX PERIOD | DATE ASSESSED | ASSESSED AMOUNT | AMOUNT DUE AS 10/19/2010 |
|---|---|---|---|
| 1996 | 12/25/2000 | $146,925.70 | $264,967.60 |
| 1997 | 12/25/2000 | $133,650.22 | $247,364.21 |
| 1999 | 12/25/2000 | $48,271.85 | $73,108.56 |
| 2000 | 12/25/2000 | $50,205.71 | $72,626.54 |
| 2001 | 06/05/2004 | $50,338.72 | $74,744.70 |
| | | **TOTAL** | $732,811.61 |

The balance due has increased since that date, and shall continue to increase by statutory additions and accruals until paid.

During 1996 and 1997 tax years, S. Hopkins had income requiring her to file federal income tax returns.  As New Mexico is a community property state, S. Hopkins also received taxable income computed on a community property basis. S. Hopkins did not, however, file federal income tax returns for the 1996 and 1997 tax years.  Accordingly, after reviewing the bank deposits, related financial documents, and the Form 1099s, the IRS prepared substitutes for return on behalf of S. Hopkins, and sent audit results and NODs for tax years 1996 and 1997 to the Hopkins.  See Notice of Deficiency, Hopkins Crim. Gov. Ex. 207, filed July 16, 2012 (76-3).

A delegate of the Secretary of the Treasury assessed against, and gave notice and demand to, S. Hopkins for unpaid income taxes, penalties, statutory additions, and interest for tax years 1996 and 1997. See IRS Form 4340s, Hopkins Crim. Gov. Exs. 117, 118. To date, S. Hopkins has neglected, failed, and refused to pay the full amount of the federal income tax assessments for these years. The table below shows the tax period, the assessment date, the amounts assessed, and the liabilities that S. Hopkins owes for these periods to October 19, 2010. See Hopkins Crim. Gov. Ex. 315 (stating the tax liabilities at issue in Count Two of the Indictment that S. Hopkins owed at the time of her criminal trial).

| TAX PERIOD | DATE ASSESSED | ASSESSED AMOUNT | AMOUNT DUE AS 10/19/2010 |
|---|---|---|---|
| 1996 | 12/25/2000 | $39,914.38 | $72,496.21 |
| 1997 | 12/25/2000 | $27,794.92 | $51,174.77 |
| | | **TOTAL** | $123,670.98 |

The balance due has increased since that date, and shall continue to increase by statutory additions and accruals until paid. Thus, the IRS required the Hopkins to file federal income tax returns for the tax years at issue: $242,070.00 in tax year 1996; $202,662.00 in 1997; $64,233.00 in 1999; $74,357.00 in 2000; and $93,157.00 in 2001. See Hopkins Crim. Gov. Ex. 192 at 4; Hopkins Crim. Gov. Ex. 192 at 4; Hopkins Crim. Gov. Ex. 193 at 9; Hopkins Crim. Gov. Ex. 194 at 2; Hopkins Crim. Gov. Ex. 194 at 2.[5]

---

[5]Although there was contention at the hearing regarding whether res judicata precludes the Hopkins from relitigating the amount of tax reflected in the Hopkins' Forms 4340, the Court cannot soundly conclude that the validity of the Hopkins' Forms 4340 was necessary to the jury's guilty verdict, but that somehow the amount of tax liability in the tax assessments was not necessary. Moreover, the Hopkins do not take issue with the amounts reflected on the Hopkins' Forms 4340, but rather, as discussed in Section I of the Analysis above, and in footnote 2, supra, contend that their income, as a whole, is "exempt" from the United States' taxing power. See e.g., Hopkins' MSJ Response ¶ F, at 4 ("Plaintiff alleges that Defendants owe the amounts due in the tables[] totaling $856,481.00. Defendants dispute this amount as such is 'exempt' income as per 26 U.S.C. § 61 as lodged in 'except as otherwise provided in this subtitle.'"); Tr. at 44:9-20 (M. Hopkins answering that the Court is correct that they do not dispute the facts of the legal assessment; rather, their "dispute [is] about the validity of the assessment from a legal standpoint.")(emphasis added). The Court thus concludes that the amount of tax liability state in the Hopkins' Forms 4340 attached to the United States' Motion for Summary Judgment was necessary to the jury's judgment in the criminal case against the Hopkins, and the Hopkins,

On July 6, 2004, August 3, 2004, July 12, 2005, and December 13, 2005, the IRS filed Notices of Federal Tax Lien for M. Hopkins' federal income tax liabilities for the tax years at issue with the County Clerk of Eddy County, New Mexico. On September 3, 2009, the IRS filed a Notice of Federal Tax Lien for S. Hopkins' federal income tax liabilities for tax years 1996 and 1997 with the County Clerk of Eddy County. See Hopkins Form 668s, Notices of Federal Tax Liens, filed July 16, 2012 (Doc. 77-2).

In May, 2010, the IRS filed Notices of Federal Tax Lien against the Hopkins' nominees -- Shalom Enterprises and House of Royale -- as the Hopkins' nominees and/or alter egos for the Hopkins' federal income tax liabilities for the years at issue with the County Clerk of Eddy County. See Nominees Form 668s, Notices of Federal Tax Liens, filed July 16, 2012 (Doc. 77-3).

2.      **The Hopkins' Real Property on Which the United States Wants to Foreclose.**

At a time when they owed income taxes and federal tax liens existed, the Hopkins acquired properties in the names of nominee entities to avoid IRS collection. As part of the tax conspiracy and evasion for which they were convicted in the United States' criminal case against them, M. Hopkins and S. Hopkins used nominees to acquire their home and adjoining real properties as a way of keeping their assets and ownership interests hidden from the IRS. See Hopkins Crim. Gov. Ex. 331, filed July 16, 2012 (Doc. 77-4)(a plat map with the Hopkins' real estate at issue). The nominees -- Shalom Enterprises and House of Royale -- held title in their name to the four real estate tracts at issue in this case. In April 22, 1997, M. Hopkins filed or caused to be filed with the Chaves County, New Mexico, Clerk several documents, each of which is identified as a "common law contract and declaration," and purports to establish several trusts, including the Grace Trust. See Grace Trust, Hopkins Crim. Gov. Ex. 42, filed July 16, 2012 (Doc. 78).

a.      **Tract #1-601 N. Canyon.**

In November 2001, when the Hopkins owed federal income taxes, M. Hopkins wrote a check for $14,589.23 from the Grace Trust account as a down payment to acquire 601 N. Canyon in Carlsbad, New Mexico. Tract #1, located at 601 N. Canyon, is more fully described as follows: "Lots 11 and 13, Block 66, Lowe Addition to the City of Carlsbad, Eddy County, New Mexico as shown on the official plat thereof on file in the office of the County Clerk of Eddy County, New Mexico," referring to MAP # 246-66-13, LOC 601 N. Canyon Street. They used Grace Trust to hold title to the property, which served as their principal residence.

_____

therefore, are precluded from relitigating the amount owing in this civil lawsuit.

In the Fall of 2007, the Hopkins' attempt to refinance their home was temporarily delayed when the title company refused to issue a clear title, because Grace Trust was a "pure trust," and not insurable as a borrower or as an owner. According to the title company, the home first needed to be transferred into an entity, a person, or an entity like a corporation. S. Hopkins then directed the nominal trustees of Grace Trust to transfer title to a different nominee -- House of Royale -- to effect the mortgage acquired from Interbay Funding, LLC, and the title to 601 N. Canyon ultimately vested from Grace Trust to House of Royale. See Hopkins Crim. Doc. 340; Crim. Trial Tr. at 607 (Sept. 23, 2010)(Cliff Currier), filed July 16, 2012 (Doc. 78-1); Hopkins Crim Gov. Ex. 34 (Docs. 78-2, 78-3, 78-4, 78-5, and 78-6). On May 28, 2010, a nominee Notice of Federal Tax lien was filed in the Eddy County property records against House of Royale as the Hopkins' nominee and/or alter ego for their unpaid federal income tax liabilities for tax years 1996, 1997, 1999, 2000, and 2001. See Entity Form 688s, Notices of Federal Tax Lien.

**b.     Tract #2: 605 N. Canyon.**

In October, 2002, M. Hopkins purchased 605 N. Canyon Road in Carlsbad in the name of Shalom Enterprises for a $1,000.00 down payment on a $21,500.00 purchase price. See Hopkins Crim. Doc. 340; Hopkins Crim. Gov. Ex. 32; Crim. Trial Tr. at 535-536 (Sept. 23, 2010), filed July 16, 2012 (Doc. 79). Tract #2 is more fully described as follows: Lowe Addition, Block 65, LOT 9, MAP# 246-66-9, 605 N. CANYON.

**c.     Tract #3: 607 N. Canyon.**

In April, 2002, M. Hopkins purchased 607 N. Canyon Road in Carlsbad in the name of Shalom Enterprises. See Crim. Trial Tr. at 533-534 (Sept. 23, 2010)(Hopkins Crim. Doc. 340), filed July 16, 2012 (Doc. 79-2); Hopkins Crim. Doc. Ex. 31, filed July 16, 2012 (Doc. 79-3). Tract #3, located at 607 N. Canyon Road in Carlsbad, is more fully described as follows: Lowe Addition, Block 65, LOT 7, MAP# 246-66-7, 607 N. CANYON. On May 28, 2010, a nominee Notice of Federal Tax lien was filed in the Eddy County property records against Shalom Enterprises, as nominee/alter ego of M. Hopkins and/or S. Hopkins for the Hopkins= unpaid federal income tax liabilities for tax years 1996, 1997, 1999, 2000, and 2001. See Nominees Form 688s, Notices of Federal Tax Lien.

**d.     Tract #4: 602 N. Canyon/108 & 110 W. Bonbright.**

In November, 2003, M. Hopkins sought to acquire 602 N. Canyon Road, as well as 108 and 110 W. Bonbright, in Carlsbad, in the name of Shalom Enterprises. Tract #4, located at 602 N. Canyon Street and 108 & 110 W. Bonbright, is more fully described as follows: Lowe Addition, Block 65, LOT 14, Book 532, Page

230, MAP# 246-65-14, 602 N. CANYON. Advanced Electronics, a New Mexico partnership, owned the land on a commercially zoned tract consisting of a two-bedroom home and two two-bedroom homes on one commercial corner lot. Hopkins entered into a New Mexico real estate contract with Advanced Electronics for the property; the original note was $45,000.00 at 7% interest with a balloon payment due November 15, 2012. On November 15, 2010, WestStar Escrow, on behalf of Advanced Electronics, sent a default notice to Shalom Enterprises for nonpayment; Shalom Enterprises owed $35,789.19 at the time and did not cure the default.

**3.      Defendants New Mexico Department of Taxation and Revenue and Bayview Loan Servicing, LLC.**


On August 15, 2006, Taxation & Revenue filed a Notice of Claim of Lien against M. Hopkins. Bayview Loan intends to establish the validity and default on a promissory note that House of Royale made, signed in November, 2007, by S. Hopkins as director, which, under New Mexico law, was a properly perfected security interest on the real property located at 601 North Canyon. Bayview Loan has a pending state court action against House of Royale, S. Hopkins, and the United States (IRS) in the Fifth Judicial District Court, Eddy County, State of New Mexico. See Fifth Judicial District Court of New Mexico, Case No. D-503-CV-201100096.

**4.      Criminal Case.**

The Hopkins were indicted and convicted of conspiracy and tax evasion. The grand jury indicted the Hopkins on one count of conspiracy and multiple counts of tax evasion. The tax evasion counts related to tax years 1996, 1997, 1999-2007. In particular, Count Two of the Indictment charged the Hopkins with tax evasion for tax years 1996, 1997, 1999, 2000, and 2001. To gain the conviction on tax evasion, the United States proved beyond a reasonable doubt all elements.

In particular, to prove the first element of tax evasion, the United States proved that the Hopkins had income, subject to tax, in each year charged. Further, with its investigations and audits, the United States provided evidence of the amounts of income that the Hopkins earned and the specific tax that was due on that income. The IRS also introduced its Form 4340s and evidence that it made valid assessments of tax. Hence, the jury necessarily decided that the Hopkins owe substantial income tax.

To prove tax evasion, the United States also proved the third element: that the Hopkins used nominees to evade or to defeat the tax owed. Again, the United States was successful in presenting the evidence of the Hopkins' use of "pure" trusts and corporate shells while retaining dominion and control of these entities to funnel monies and to conceal their assets, including their home and real estate. The jury's verdict in finding the Hopkins guilty of Count Two=s tax evasion necessarily determined that the entities were nominees that the Hopkins used.

At the Hopkins' criminal trial, the United States proved that the Hopkins earned significant income, but failed to report it and used nominees in their illegal attempt to avoid paying any income tax. The Hopkins testified at their trial. In the Hopkins' criminal trial, the jury instructions, essential to the verdict, were provided to the jury as follows:

INSTRUCTION NO. 3

2. From at least 1996 to the present, MARK E. HOPKINS worked as an emergency room doctor for various medical staffing companies in New Mexico. Since January 1, 1996, MARK E. HOPKINS has earned at least $3,616,134 in business income from these medical staffing companies, including the Schumacher Group, which paid him for services that he performed as an emergency room physician at hospitals in the region that includes Carlsbad Medical Center.

. . . .

4. MARK E. HOPKINS and SHARON J. HOPKINS have failed to file personal federal tax returns since tax year 1997.

5. To assist in their tax evasion scheme, MARK E. HOPKINS and SHARON J. HOPKINS created a number of entities that the couple used to conceal their assets, including:

i) Shalom Enterprises, Inc. ("Shalom Enterprises"), an Oregon corporation, whose officers were MARK E. HOPKINS and SHARON J. HOPKINS.

ii) House of Royale, Inc. ("House of Royale"), a Nevada Corporation, whose only officer was SHARON J. HOPKINS.

. . . .

v) The Grace Trust, a purported trust whose purported trustees were V.A. and S.S.

. . . .

## Manner and Means

. . . .

10. It was a part of the conspiracy for MARK E. HOPKINS to direct his business income to a nominee to conceal his income.

11. It was a further part of the conspiracy that MARK E. HOPKINS and SHARON J. HOPKINS would transfer funds between bank accounts held in nominee names.

12. It was a further part of the conspiracy for MARK E. HOPKINS and SHARON J. HOPKINS to title real property in the names of nominees to conceal their ownership of the property.

13. It was a further part of the conspiracy that MARK E. HOPKINS and SHARON J. HOPKINS would send threatening correspondence to IRS employees to impede the ascertainment and collection of the federal income taxes that they owed.

## Overt acts

In furtherance of the conspiracy, and to effect the objects thereof, the following overt acts, among others, were committed in the District of New Mexico, and elsewhere:

. . . .

16. On or about April 15, 1997, MARK E. HOPKINS and SHARON J. HOPKINS filed an IRS Form 1040, U.S. Individual Income Tax Return, falsely stating that they had an adjusted gross income of zero and requesting a refund of all federal income tax withheld.

17. On or about April 22, 1997, MARK E. HOPKINS filed or caused to be filed with the Chaves County Clerk seven documents, each of which was identified as a "common law contract and declaration", which documents purported to establish the Grace Trust, the Shalom Trust, the Solomon Educational Trust, the Maranatha Trust, the Esteem International Trust, the Bethlehem Trust, and the Guadalupe Medical Services Trust.

. . . .

24. In December 1998, MARK E. HOPKINS directed his new employer, the Schumacher Group, to pay his business income to Shalom Enterprises.

. . . .

29. On or about November 15, 2001, MARK E. HOPKINS wrote a check for $14,589.23 from the Grace Trust account #xxxxxx8409 as a down payment for 601 N. Canyon in Carlsbad, New Mexico. Said property was used as the personal residence of MARK E. HOPKINS and SHARON J. HOPKINS through the date of this indictment.

30. On or about April 15, 2002, MARK E. HOPKINS purchased 607 N. Canyon Road in the name of Shalom Enterprises.

31. On or about October 16, 2002, MARK E. HOPKINS purchased 605 N. Canyon Road in the name of Shalom Enterprises.

32. On or about July 28, 2003, SHARON J. HOPKINS filed an Amendment to the Annual Report of Shalom Enterprises, Inc. with the Secretary of State for Oregon, listing MARK E. HOPKINS as president and SHARON J.

HOPKINS as secretary.

33. On or about November 14, 2003, MARK E. HOPKINS purchased 602 N. Canyon Road as well as 108 and 110 W. Bonbright in the name of Shalom Enterprises.

34. On or about November 14, 2003, MARK E. HOPKINS and SHARON J. HOPKINS applied for an American Express credit card in the name of House of Royale, Inc.

35. On or about January 30, 2004, MARK E. HOPKINS and SHARON J. HOPKINS opened a bank account at Wells Fargo Bank, NA in the name of House of Royale, Inc., account #xxxxxx0076.

36. On or about December 29, 2006, SHARON J. HOPKINS filed articles of incorporation for the House of Royale, Inc. with the Secretary of State for Nevada.

. . . .

Count 2

37. Paragraphs 1 through 6, and 14 through 36, above, are hereby are incorporated by reference as if realleged and recited in full.

38. From in or about 1996 up to and including the date of this indictment, in
the District of New Mexico, the defendants, MARK E. HOPKINS and SHARON J.
HOPKINS, did willfully attempt to evade and defeat the payment of a large part of the income tax due and owing by them to the United States of America for the tax years set forth below and in the amounts set forth below, by, among other things, using nominees to conceal their income, bank accounts, and ownership of assets.

. . . .

In violation of 26 U.S.C. § 7201.

Counts 3-8

39. Paragraphs 1 through 6, and 14 through 36, above, are hereby incorporated by reference as if realleged and recited in full.

40. For each year set forth below, MARK E. HOPKINS and SHARON J. HOPKINS, had received taxable income in the amounts set forth below, computed on a community property basis for calendar years 2002 through 2007. Based upon said taxable income, the defendants had a substantial tax due and owing to the United States. Knowing and cognizant of the foregoing facts and the legal duty deriving therefrom, MARK E. HOPKINS and SHARON J. HOPKINS, in the District of New Mexico, did willfully attempt to evade and defeat the assessment and payment of income taxes due and owing by them to the United States of America for each of the following calendar years by committing the following affirmative acts of tax evasion, among others: by failing to file any income tax returns on or before the due date of the tax returns, as required by law; by failing to pay those income taxes, and by, among other things, using nominees to conceal their income, bank accounts, and ownership of assets.

. . . .

In violation of 26 U.S.C. § 7201.

. . . .

INSTRUCTION NO. 7

The defendants are charged in Counts 2 through 8 with violating Title 26, Section 7201 of the United States Code. This law makes it a crime for anyone willfully to attempt to evade or defeat the payment of federal income tax. To find a defendant guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*: the defendant or another person owed substantial income tax;

*Second*: the defendant intended to evade and defeat payment of that tax;

*Third*: the defendant committed an affirmative act in furtherance of this intent, that is the defendant used nominees to conceal their income, bank accounts, and ownership of assets; and

*Fourth*: the defendant acted willfully, that is, with the voluntary intent to violate a known legal duty.

To "evade and defeat" the payment of tax means to escape paying a tax due other than by lawful avoidance. The Indictment alleges a specific amount of tax due. The proof, however, need not show the exact amount of the additional tax due. The government is required only to prove, beyond a reasonable doubt, that the additional tax due was substantial. Whether the amount is "substantial" turns on whether under the surrounding circumstances the amount of the deficiency would be significant to an ordinary person.

. . . .

INSTRUCTION NO. 9

The government has contended that the defendants owed taxes to the United States. For Count 2, the government contends that the defendants evaded the payment of their federal income tax liability for tax years 1996, 1997, 1999, 2000, and 2001. The government has put forth evidence of assessments for each of these years.

An assessment is simply a bookkeeping entry by the IRS that shows that the defendant owed money to the United States. In this case, an IRS agent prepared a substitute for return for the defendants for years 1996, 1997, 1999, 2000, and 2001. After the substitute for return was prepared, the IRS was able to prepare an assessment, which included unpaid federal income taxes and certain penalties.

Once some evidence is introduced demonstrating that the defendants received unreported income, the jury may consider this as evidence of a tax due and owing. The defendants may then put forth evidence that shows that this tax liability does not exist.

For Counts 3 through 8, the government contends that the defendants evaded the payment of their federal income tax liability for tax years 2002, 2003, 2004, 2005, 2006, and 2007. You may find the defendants had a tax due and owing based on the testimony at trial. . . .

United States v. Mark E. Hopkins and Sharon J. Hopkins, No. 09-0863 MCA, Court's Jury Instructions at 4-12, and 19-20, filed Sept. 28, 2010 (Doc. 260)("Court's Jury Instruction in No. 09-0863 MCA"). On September 29, 2010, after a seven-day trial, the jury found both M. Hopkins and S. Hopkins guilty of tax evasion -- Counts 2-8 of the Indictment, Hopkins Crim. Gov. Ex. 315, filed

in No. 09-0863 Apr. 9, 2009 (Doc. 2), filed in this civil case July 16, 2012 (Doc. 67-4).   See United States v. Mark E. Hopkins and Sharon J. Hopkins, No. 09-0863 MCA, Redacted Verdict as to M. Hopkins at 1-2, filed in No 09-0863 Sept. 29, 2010 (Doc. 270), filed in this civil case July 16, 2012 (Doc. 67-2); United States v. Mark E. Hopkins and Sharon J. Hopkins, No. 09-0863 MCA, Redacted Verdict as to S. Hopkins at 1-2, filed in No. 09-0863 Sept. 29, 2010 (Doc. 272), filed in this civil case July 16, 2012 (Doc. 67-3).

The jury actually and necessarily decided that the Hopkins owed federal income taxes for years 1996, 1997, 1999, 2000, and 2001that the IRS had assessed.   In proving that the Hopkins willfully attempted to evade and defeat payment of income taxes, the United States established another element of tax evasion: that the Hopkins used nominees to conceal their income, bank accounts, and ownership of assets.

M. Hopkins and S. Hopkins each testified, and presented witnesses and evidence. The Hopkins had a "full and fair opportunity to litigate."   The Honorable M. Christina Armijo, United States District Court Chief Judge for the District of New Mexico, entered judgment and sentenced the Hopkins.   See Judgment, Hopkins Crim. Doc. 308, filed July 16, 2012 (Doc. 79-4).   Judge Armijo ordered restitution to be paid to the IRS in the amount of $1,744,222.26.   See Judgment at 1.

Importantly, the Hopkins appealed only their sentences, and not their convictions, to the United States Court of Appeals for the Tenth Circuit.   See M. Hopkins' Opening Brief at 2, Case 11-2114 (10th Cir.)(Doc. 01018784918)(stating that the sole issue presented for review is "[w]hether the district court erred in imposing a two level enhancement under U.S. Sentencing Guidelines § 3C1.1 for obstruction of justice"); S. Hopkins' Opening Brief at 1-2, Case 11-2115 (10th Cir.)(Doc. 1018800195)(positing three issues: two for enhancement and one for right to counsel).   In light of the fact that the Hopkins did not appeal their tax evasion or conspiracy conviction to the Tenth Circuit, but appealed only the enlargement of their sentences, their tax conviction is final.[6]

SJ MOO at 3-20.

---

[6] Pursuant to rule 201 of the Federal Rules of Evidence, the Court takes judicial notice of specific pleadings and exhibits in the Hopkins' criminal case.   The Court may take judicial notice of docket entries, because rule 201 authorizes a court to take judicial notice of an adjudicative fact not subject to reasonable dispute.   See e.g., In re Indian Palms Assoc., 61 F.3d 197, 205 (3d Cir. 1995).

# PROCEDURAL BACKGROUND

In the SJ MOO, the Court described the early procedural history of this case:

> The United States commenced this lawsuit against the Hopkins and the other co-Defendants pursuant to 26 U.S.C. §§ 7401, 7402, and 7403, to reduce to judgment the outstanding tax assessments against the Hopkins, "and to recover the unpaid federal taxes, penalties and interest assessed against them by foreclosure of federal tax liens encumbering their interest in certain real property located in Eddy County, New Mexico." United States' Complaint ¶ 1, at 1, filed May 13, 2011 (Doc. 1)("Complaint"). The Court granted the United States default judgment in this case against both entities as nominees. Specifically, on December 7, 2011, the Court granted the United States' Motion for Default Judgment against House of Royale and Shalom Enterprises. See Default Judgment Against Defendants House of Royale, Inc. and Shalom Enterprises, Inc. (Doc. 36)("Default Judgment"). According to the Default Judgment, House of Royale is the Hopkins' nominee/alter-ego that is holding title only to Tract #1, the residential property for the real owners, the Hopkins. Also according to the Default Judgment, Shalom Enterprises is the Hopkins' nominee/alter ego that is holding title only to the properties Tract #2, Tract #3, and Tract #4 -- without prejudice to Advanced Electronics -- for the real owners, the Hopkins. See Default Judgment at 2.

> The United States, on behalf of the IRS, filed its Motion for Summary Judgment pursuant to rule 56 of the Federal Rules of Civil Procedure and moves the Court to grant summary judgment as follows: (i) that the United States grant the United States judgment such that M. Hopkins is indebted to the United States for $732,811.61 as of October 19, 2010, for the federal income taxes assessed against him for the years 1996, 1997, 1999, 2000, and 2001, plus interest and all statutory additions provided by law until paid; (ii) that the Court grant the United States judgment such that S. Hopkins is indebted to the United States for $123,670.98 as of October 19, 2010, for the federal income taxes assessed against her for the tax years 1996 and 1997, plus interest and all statutory additions provided by law until paid; (iii) that the Court order, adjudge, and decree that the House of Royale, Shalom Enterprises, and the Grace Trust, are the Hopkins' nominees, alter egos, transferees, agents, and/or holders of their beneficial interest in Tracts 1, 2, and 3; (iv) that the Court order, adjudge, and decree that the United States has valid liens in Tracts 1, 2, and 3; (v) that the Court order the foreclosure of such IRS tax liens, that Tracts 1, 2, and 3 be sold in accordance with the law and the Court's practices, and that the proceeds of the sale be distributed in accordance with the Court's findings and the United States['] rights;

and (vi) that Advanced Electronics and not Shalom Enterprises or the Hopkins, who failed to pay the amounts required under the contract, owns Tract 4, located at 602 N. Canyon, Carlsbad, and 108 & 110 W. Bonbright, Carlsbad, and that Shalom Enterprises and the Hopkins have no rights or interests in the property. See Motion for Summary Judgment at 1-2.

The United States contends that it is entitled to summary judgment as a matter of law, because there is no genuine issue of material fact. See Motion for Summary Judgment at 1. In support of their Motion for Summary Judgment, the United States argues that res judicata applies to any assertion by the Hopkins that they do not owe substantial income tax, pointing out that to have proved that the Hopkins were guilty of tax "evasion," one of the elements that the United States was required to prove was that the Hopkins owe substantial income tax. MSJ Brief ¶ 1, at 1-2. The United States asserts that it proved that the Hopkins used the nominees to conceal their income, bank accounts, and ownership of assets -- another element of tax evasion -- in the Hopkins' criminal case by proving that the Hopkins "willfully attempted to evade and defeat payment of income taxes." MSJ Brief ¶ 2, at 2. The United States contends that res judicata thus applies to any assertion by the Hopkins that the United States cannot foreclose on the tracts of land held by the nominees -- Shalom Enterprises and House of Royale. See MSJ Brief ¶ 2, at 2-3. The United States asserts: "With the Hopkins' convictions and the fact that this Court has granted the United States default judgment in this case against both entities as nominees, the United States is entitled to summary judgment on the two issues presented." MSJ Brief ¶ 2, at 3.

The United States argues that it is entitled to judgment under the res judicata doctrine, as the jury found in convicting the Hopkins of tax evasion that the United States proved beyond a reasonable doubt that the Hopkins committed tax evasion and also that the United States proved the validity of the IRS' tax assessments on which the IRS now seeks to foreclose. See MSJ Brief at 13-15. The United States asserts:

> The Tenth Circuit has adopted the "transactional" approach to determine what constitutes a "cause of action" for res judicata. Wilkes[ v. Dep't of Emp't Div. of Labor Standards], 314 F.3d [] [501] 504 [(10th Cir. 2002)]. Under this approach, a cause of action encompasses "all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." Id.

MSJ Brief at 14 n.46.   The United States thus contends that the only issue left for the Court is whether the IRS' liens are valid and that the IRS can foreclose on the liens, as to which, it asserts, there is no material dispute.

The United States points out that, under the Internal Revenue Code, Title 26 of the United States Code ("IRC"), the IRS Forms 4340s for the Hopkins for tax years 1996, 1997, 1999, 2000, and 2001 are prima facie evidence of tax liability.   See MSJ Brief at 16 (citing United States v. Silkman, 220 F.3d 935, 937 (8th Cir. 2000); United States v. Voorhies, 658 F.2d 710, 715 (9th Cir. 1981)).   The United States cites to 26 U.S.C. § 6321 for the proposition that Hopkins' federal tax liens arose automatically against them on the day the IRS made the assessment, and that the liens are effective against all of the Hopkins' property rights whether existing or acquired after the liens arose, and that they remain valid and enforceable until the underlying debt is satisfied.   See MSJ Brief at 16 (citing Texas Commerce Bank-Fort Worth, N.A. v. United States, 896 F.2d 152, 161 (5th Cir. 1990)).   The United States contends that it is thus entitled to summary judgment in its favor for the amounts reflected in the 4340s for the Hopkins.   See MSJ Brief at 17-18.   The United States asserts that, because the § 6321 statutory lien attaches to all interests in property whether owned in December 2000, the time at which the IRS lien for the amount owing from 1996 and 1997 attached, or acquired afterward, it is entitled to foreclose on the following tracts of land to satisfy the liens: (i) 601 N. Canyon, acquired in November 2001; (ii) 605 and 607 N. Canyon, acquired in October and April of 2002 respectively, and (iii) 602 N. Canyon St., 108 W. Bonbright, and 110 W. Bonbright, acquired in November 2003.   See MSJ Brief at 17-19.   In regards to the rights of the Hopkins' other creditors -- Taxation & Revenue and Bayview Loan -- the United States notes:

> [T]he IRS liens predate those of the State of New Mexico; the state's claims, therefore, are junior to the IRS claims and would take after the IRS liens have been satisfied -- an unlikely event. As to Bayview's claims that arise from its refinancing efforts in 2007 with respect to Tract #1 at 601 N. Canyon, the United States and Bayview have agreed that the IRS liens are entitled to and shall be foreclosed against the property, but that distribution of sale proceeds after costs, await further stipulation of these parties for a future order of the Court.

MSJ Brief at 19.

In regards to the Hopkins' arguments, the United States asserts that M.

Hopkins takes the position that, "since the IRS has not pointed to a single statute that he recognizes, [M.] Hopkins has refused to file federal income tax returns." MSJ Brief at 20. The United States argues that the Court should find that the Hopkins' tax arguments lack a sound basis in the law, because "[t]he Tenth Circuit in particular has dispatched with tax protestors repeatedly for clinging to arguments like those made by the Hopkins." MSJ Brief at 20 (citing Wheeler v. C.I.R., 521 F.3d 1289 (10th Cir. 2008); Lonsdale v. United States, 919 F.2d 1440 (10th Cir. 1990)). The United States contends that the Hopkins' tax arguments "fall into most of the[] categories" of arguments against taxing income that the Tenth Circuit has analyzed and rejected, and thus so should the Court. MSJ Brief at 21. The United States argues that "[e]very taxpayer has a legal duty to maintain accounting records which enable him to file a tax return . . . . [, and] [a] taxpayer who has abandoned the advantage of mathematical precision by failing to keep adequate records cannot complain [about] the Commissioner's assessment[s]." MSJ Brief at 21-22 (quoting Jones v. Commissioner, 903 F.2d 1301, 1303 (10th Cir. 1990)). The United States thus asks the Court to reject any such arguments the Hopkins may assert.

On August 6, 2012, Bayview Loan filed its Defendant Bayview Loan Servicing's Response to Plaintiff's Motion for Summary Judgment. See Doc. 95 ("Bayview's MSJ Response"). Bayview Loan does not oppose the Plaintiff's relief sought in paragraphs one and two of their Motion for Summary judgment - - that judgment should be entered against the Hopkins to reflect their indebtedness to the United States. Bayview's MSJ Response ¶ 1, at 1. It argues, however, that it opposes the United States' relief sought in paragraph three of its Motion for Summary Judgment. See Bayview's MSJ Response ¶ 2, at 1. Bayview Loan notes that the United States relies upon the Default Judgment, which the Court entered to support its contention that House of Royale and Shalom Enterprises M. Hopkins' nominees and/or alter-egos, but points out that the Court did not enter the Default Judgment against it. See Bayview's MSJ Response ¶ 2, at 1. Bayview Loan asserts that there is thus no evidence in the record that the United States sought or obtained judgment against Bayview Loan establishing that M. Hopkins' pre-existing IRS tax liens should be prior and superior as against Bayview Loan concerning the property at 601 N. Canyon. See Bayview's MSJ Response ¶ 1, at 1-2. It contends that the original lender, InterBay Funding, could not have known that the borrower, House of Royale, was M. Hopkins' alter ego or nominee, because, "[a]s evidenced by the copy of Bayview's Note and Mortgage . . . , the borrower on the subject loan was House of Royale, Inc., through Sharon Hopkins as its director . . . . [and] the loan was guaranteed by Sharon J. Hopkins, individually." Bayview's MSJ Response ¶ 2, at 2. Bayview Loan asserts that, because there is no indication in the loan documents that M.

Hopkins was associated with the House of Royale or the loans, there is a genuine issue of material fact whether the IRS' lien is superior to that of Bayview Loan's. See Bayview's MSJ Response ¶ 2, at 2. Bayview Loan states that, in an effort to resolve their differences without adding to the expense of this litigation, it has agreed with the United States "that Plaintiff and Bayview are both entitled to foreclose on their liens against [] 601 N. Canyon, and have agreed upon an equitable division of the proceeds of the sale of the property." Bayview's MSJ Response ¶ 3, at 2. Should the Court not approve the terms of this settlement agreement, Bayview Loan ask the Court for an additional opportunity to present evidence whether the IRS' liens are superior to those of Bayview Loan's. See Bayview's MSJ Response ¶ 4, at 2-3. Bayview Loan states that it does not further object to any relief that the United States is seeking in its Motion for Summary Judgment. See Bayview's MSJ Response ¶ 4, at 3.

On August 13, 2012, the Hopkins filed their Defendant's Rebuttal to Plaintiff's Motion for Summary Judgment. See Docs. 96 and 97 ("Hopkins' MSJ Response"). The Hopkins assert that their Hopkins' MSJ Response shows that: (i) there are genuine factual disputes; (ii) there are issues in the case which were not litigated at the Hopkins' criminal trial and are not precluded under the doctrine of res judicata; (iii) there are inconsistencies in the United States' arguments; (iv) the United States misapplies tax laws to the phrase "exempt income;" (v) the jury did not find the amount of tax owed as S. Union Co. v. United States, No. 11-94, 132 S. Ct. 2344 (June 12, 2012), requires; (vi) the discovery necessary for the case has not been completed; (vii) the Hopkins' criminal trial excluded witnesses that would be allowed in the trial here; (viii) the Hopkins' criminal trial disallowed evidence that would be admissible and relevant here; and (ix) the United States mischaracterizes rights as "Tax Protestor argument." Hopkins' MSJ Response at 1. The Hopkins note that the Tenth Circuit has stated that in "a Motion for Summary Judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, and surmise." Hopkins' MSJ Response at 2 (quoting Bones v. Honeywell Int'l, Inc., 366 F.3d 869, 875 (10th Cir. 2004)). They also point out that the Court, as a district court deciding a summary judgment motion, "must construe the facts 'in the light most favorable to the non-moving party.'" Hopkins' MSJ Response at 2 (quoting Duvall v. Ga-Pac. Consumer Prods. L.P., 607 F.3d 1255, 1259 (10th Cir. 2010)).

The Hopkins argue that the United States' assertion that the indebtedness the Hopkins allegedly owe arose from income is without a sound basis in the law, because they contend that the income that they received from 1996 on was taxable income, but was exempt from taxation under the United States Constitution. See

Hopkins' MSJ Response ¶ A, at 2-3. They argue that the United States' failure to recognize the income as exempt contradicts the United States' position: "Every Substitute for Return [], Notice of Deficiency [], Notice of Assessment and Demand for Payment [], liens, levies, indictment, conviction, and attempt at foreclosure has been tainted by a flagrant disregard of a claimed exemption on income earned when exercising a constitutionally guaranteed fundamental right." Hopkins' MSJ Response ¶ A, at 3 (citing 26 C.F.R. § 1.861-8T(e)(ii) and (iii)). The Hopkins contend that, where the United States asserts the Hopkins effectively did not file tax returns as the filed tax returns were legally invalid, they "have never 'avoided liability' for any taxable income. Defendants proved that the income in question was 'exempt.'" Hopkins' MSJ Response ¶ D, at 3. The Hopkins dispute that they owe the United States the amounts listed in the tables in its MSJ Brief, asserting that "this amount . . . is 'exempt' income as per 26 U.S.C. § 61, as lodged in 'except as otherwise provided in this subtitle.'" Hopkins' MSJ Response ¶ F, at 4. The Hopkins contend that, because M. Hopkins was taxed for 1996 and 1997 on 100% of his taxable income, and S. Hopkins was taxed on her 50% as community property, they "have been taxed at 150% of the allowable statutory amount on the alleged 'taxable income' which forms the basis of the tables in the years 1996 and 1997." Hopkins' MSJ Response ¶ I, at 4.

The Hopkins argue that res judicata does not apply, because the criminal forum was not a proper forum in which the Hopkins could litigate the issue "as to what income is considered 'Exempt' . . . nor was evidence put forth to support Defendants' arguments . . . ." Hopkins' MSJ Response ¶ 2, at 4. They assert that they were not allowed at their criminal trial to put forth evidence regarding the amount of their income that is exempt, as 26 C.F.R. § 19.22(b)-1 uses that term. See Hopkins' MSJ Response ¶ 2, at 5.

The Hopkins point to various statements in the United States' Motion for Summary Judgment and the corresponding MSJ Brief that they contend are inconsistent. See Hopkins' Response ¶ 3, at 5. The Hopkins contend that the United States' factual assertion that "Hopkins filed a joint federal income tax return that listed zero income," and that "Hopkins refused to correctly file their 1996 federal income tax return and never filed another federal income tax return," is inconsistent with its statement that "Sharon Hopkins failed to file federal income tax returns for the 1996 and 1997 tax years." Hopkins' MSJ Response ¶ 3, at 5. The Hopkins also contend that the United States' assertion that it is "settled law that zero returns are not legally considered to be tax returns," MSJ Brief ¶ 6, at 6 (citing United States v. Rickman, 368 F.2d 182 (10th Cir. 1980)), is incorrect, in that the law is not settled that a zero return is not legally a tax

return, see Hopkins' MSJ Response ¶ 3, at 5 (citing United States v. Long, 618 F.2d 74 (9th Cir. 1980); United States v. Moore, 627 F.2d 830 (7th Cir. 1980)).

The Hopkins note that, in response to the United States' contention "that every dollar earned by [the Hopkins] was 'taxable income,'" the Hopkins note that they "will argue in their Case-in-Chief that all or a portion of such may be 'exempt income' as per . . . Follett v. McCormick, 321 U.S. 573 (1944) and Murdock v. Pennsylvania, 63 S. Ct. 870 (1943)." Hopkins' MSJ Response ¶ 4, at 6. They assert that their income is exempt from gross income under the Sixteenth Amendment, 26 U.S.C. § 61, 26 U.S.C. § 861, and 26 C.F.R. § 1.861-8T(d)(2)(ii). See Hopkins' MSJ Response ¶ 4 at 6-7. The Hopkins also argue that, pursuant to the Supreme Court of the United States' 2012 opinion in S. Union Co. v. United States, 132 S. Ct. at 2344, requiring a jury trial on any imposition of criminal fines, the jury did not find the amount of tax owed and the issue has therefore not been adjudicated. See Hopkins' MSJ Response ¶ 5, at 7. They assert further that, because they have only recently received "a very limited discovery" five months after it was requested, the United States, in bad faith, has placed the Hopkins at a disadvantage. Hopkins' MSJ Response ¶ 6, at 7-8. The Hopkins contend that, as the United States' filing of its Motion for Summary Judgment only eight days after serving the discovery evince, the delay in discovery was in bad faith. See Hopkins' MSJ Response ¶ 6 at 8.

The Hopkins additionally argue that the Court should deny the Motion for Summary Judgment, because Joe Banister, a witness that they tried to call at their criminal trial, but who was excluded after a hearing under Daubert v. Merrell Parms., Inc., 509 U.S. 579 (1993), will be allowed to testify in this civil case under rule 28 of the Federal Rules of Civil Procedure. See Hopkins' MSJ Response ¶ 7, at 8. They assert that they will also be allowed evidence in this civil trial, "including affidavits and historical (law) evidence, which was disallowed by the Court" in their criminal trial. Hopkins' MSJ Response ¶ 8, at 9. Last, they argue that the United States, "in its attempt to dispose of Defendant's tax protestor arguments," mischaracterizes their rights and imputes alleged arguments which they assert are mischaracterizations of their arguments. See Hopkins' MSJ Response ¶ 9, at 9-10. The Hopkins point out that, where the United States asserts that the Hopkins espouse that the United States does not have the power to tax wages or individuals, they argue, rather, that the United States "can tax all taxable income. BUT it CANNOT tax 'exempt income.'" Hopkins' MSJ Response ¶ 9, at 10. Similarly, the Hopkins assert that, where the United States argues that they contend that wages are not income, the Hopkins concede that "[w]ages are income," but they contend that "not all income is taxable income." Hopkins' MSJ Response ¶ 10, at 11. In response to the assertion that the Hopkins espouse that tax is voluntary, the Hopkins' reply:

"Income tax is not voluntary. Income tax is mandatory on all taxable income." Hopkins' MSJ Response ¶ 10, at 11. The Hopkins assert:

> Plaintiff claims that Defendant's arguments fail in most of 'these categories' (Lonsdale arguments) and thus should be rejected. Defendant agrees that IF Defendant was making those arguments, they should be rejected. However, Defendants HAVE NOT ACCEPTED SUCH ARGUMENTS. Plaintiff has assumed incorrectly, and has predicated [its] entire argument on a misconception and error.

> Plaintiff has been misinformed because Defendants have NEVER had the opportunity to bring THEIR true arguments before the Court or a jury. Plaintiff's ignorance of Defendants' real arguments on this matter is evident.

Hopkins' MSJ Response ¶ 10, at 11. The Hopkins ask that the Court not grant the Motion for Summary Judgment, because, as discovery has not been completed, it is not ripe, and because "a trier of fact [could] resolve this case either way . . . ." Hopkins' MSJ Response at 12.

On August 22, 2012, the United States filed its MSJ Reply. The United States argues that the Hopkins' compensation earned as a physician is income subject to tax and not exempt. See MSJ Reply at 1. The United States asserts that the Hopkins hold the "erroneous belief," held by many tax protestors, that there is allegedly no taxable profit or gain when a person exchanges labor for money, because earnings from labor do not come within the statutory definition of gross income. MSJ Reply at 1. The United States contends that, like many tax protestors, the Hopkins support their argument with "inapplicable statutes or Treasury regulations, some dealing with corporate tax or the 1939 tax code long since replaced, as well as a smattering of lines from dicta in ancient court decisions." MSJ Reply at 1 (citing, as an example, the Hopkins' MSJ Reply ¶ 4). The United States argues that the idea that earnings from labor is not taxable income, or is exempt income, has been "universally rejected by courts everywhere and the Tenth Circuit in particular." MSJ Reply at 1-2 (citing Lonsdale v. United States, 919 F.2d at 1440).

The United States asserts that, for federal income tax purposes, gross income means income from whatever source derived and expressly includes compensation for services, no matter what form payment for services may take. See MSJ Reply at 2 (citing 26 U.S.C. § 61(a)(1)). The United States refers the

Court to M. Hopkins' testimony at his criminal trial as an example of M. Hopkins' tax protestor argument:

> Well, due to the fact that I was exercising a fundamental right to work, and that work was an even exchange, there was no increase or gain. And, according to what I understood, that was exempt income. That was money coming in that was exempt and was to be excluded before you ever got to gross receipts. When you exercise your fundamental right, those are nontaxable. Government can't tax your right to work or the exchange that you get for labor.
>
> . . . .
>
> We know that compensation for labor in the private sector by a citizen of one of the 50 sovereign states is not income as lawfully defined. Income as defined in law is limited to gains and profits severed from capital and reinvested.

Hopkins Crim. Doc. 336, Trial Transcript at 50:3-7, 51:11-19 (taken Sept. 27, 2010)(M. Hopkins), filed August 22, 2012 (Doc. 102-1). The United States contends that these tax protestor arguments were fully contested before the jury in the course of the Hopkins' criminal trial, and the jury found that the United States had proven, beyond a reasonable doubt, "each element . . . including the first element of tax evasion -- that the Hopkins had income subject to tax, and owed substantial income tax." MSJ Reply at 3. The United States asserts that the jury also found that the Hopkins "had $242,070 in gross income in tax year 1996; $202,662 in 1997; $64,233 in 1999; $74,357 in 2000; and $93,157 in 2001." MSJ Reply at 3-4. These arguments, having been raised and decided by the jury in their criminal trial, the United States contends, should be res judicata and collaterally estop the Hopkins' efforts to assert to the contrary in this civil case. See MSJ Reply at 4.

In response to the Hopkins' assertion that the United States is incorrect that they failed to file a 1996 income tax return, the United States "admits that such a form was submitted to the IRS and produced a copy of it . . . . It was not a valid income tax return . . . ." MSJ Reply at 5. The United States points to Bachman v. Commissioner, 283 F. App'x 636 (10th Cir. 2008), contending that the Tenth Circuit held that federal income tax returns indicating that the taxpayer had no income were not valid returns "because a return that asserts no income is not a valid return." MSJ Reply at 5. The United States asserts that, pursuant to

Bachman v. Commissioner and United States v. Rickman, 638 F.2d 182 (10th Cir. 1980), "the Court may hold that Hopkins' Form 1040 for 1996 was not a valid return . . . ."  MSJ Reply at 6.  The United States argues that, because the IRS at all times considered the 1996 Form 1040 invalid, whether the Court finds the 1996 return valid is not a material issue in the resolution of the case. See MSJ Reply at 6.

The United States argues that the "Hopkins' Form 1040 for 1997 Is A Myth."  MSJ Reply at 6.  It points out that the Hopkins fail to refer to evidence in the record to support that they filed a tax return in 1997, whereas, the United States relies upon the declaration of an IRS agent that the IRS never received such a tax form from the Hopkins or their attorneys.  See MSJ Reply at 6.  The United States asserts that, because any tax return filed by the Hopkins would have represented a zero return and the IRS would have thus treated it as another invalid return, whether the Hopkins filed a 1997 tax return is not material to the Court's determination of summary judgment.  See MSJ Reply at 6.

In reply to the Hopkins' contention that they never avoided liability for any taxable income, the United States asserts that Judge Armijo noted at their sentencing hearing that "the trusts were created . . . to avoid payment and as part of a scheme to avoid payment of the federal and state taxes and also to evade the tax laws."  MSJ Reply at 7 (quoting Transcript of Sentencing Hearing 14:7-16 (taken May 17, 2011)(Court), filed August 22, 2012 (Doc. 102-3)).  The United States contends that, "[w]hether they accept the term 'avoid' or not, it remains that Hopkins' tax evasion has been confirmed and their denials do not create genuine issues of material fact here."  MSJ Reply at 7.  In response to the Hopkins' contention that the United States never proved the substance of any discussions at any alleged tax defier meetings that the Hopkins attended, the United States asserts that "the testimony of Mark and Sharon Hopkins at the criminal trial was more than sufficient to detail what was discussed by the tax defier groups and meetings."  MSJ Reply at 7.  The United States argues that, regardless whether the United States has met its burden to prove what was said at these meetings, what was discussed at these meetings is not material to any genuine issue in the case, and the Court nevertheless should grant summary judgment in its favor.  See MSJ Reply at 7.

The United States asserts that the Hopkins' contention that the United States did not credit the $130,000.00 seized by the IRS and the $32,383.00 paid to the IRS to the amount they owe is without a sound basis in the facts, because the amount reflected in the United States' pleadings is the amount owed as of October 19, 2010, and the seizure of $130,000.00 was applied in December of

2010. <u>See</u> MSJ Reply at 8. The United States notes that the $32,383.00 paid to the IRS in 1996 was posted and is reflected in the IRS Transcripts and the IRS Forms 4340 as a withholding credit with $16,191.00 credited to each of the Hopkins' account. <u>See</u> MSJ Reply at 8. In response to the Hopkins' contention that the IRS assessments for tax years 1996 and 1997 are incorrect, because they tax each of the Hopkins on one hundred percent of their individual income and fifty percent of the spouse's income, the United States asserts that it is the correct accounting method used by the IRS where a couple fails to file a valid tax return and thus fails to file as married filing jointly. <u>See</u> MSJ Reply at 8-9. The United States contends:

> Each IRS assessment is legally correct where neither defendant filed a valid tax return, combining their income and electing to be taxed on a "married, filing joint" tax rate and to be jointly and severally liable for the taxes. To gain that option, Hopkins must file a valid Form 1040 and elect the "married, filing joint" tax status. Consequently, the Hopkins' argument does not create a genuine issue of material fact and the United States is entitled to summary judgment against Mark Hopkins for the taxes assessed against him and is entitled to summary judgment against Sharon Hopkins for the taxes assessed against her.

MSJ Reply at 9-10 (internal footnote omitted).

The United States argues that the Hopkins' argument that res judicata does not apply to the amount owing under <u>S. Union Co. v. United States</u>, 132 S. Ct. at 2344, because the jury did not find the amount owing, is without a sound basis in the facts. <u>See</u> MSJ Reply at 10. The United States asserts that Count II of the Indictment expressly required the jury to find, and the jury did in fact find, that the Hopkins "did willfully attempt to evade and defeat the payment of a large part of the income tax due and owing by them to the United States," for the exact amounts that the United States lists in its MSJ Brief. MSJ Reply at 10-11. Even if res judicata did not apply to the amount owing, the United States asserts that it has provided competent summary judgment evidence of the Hopkins' income, the IRS assessments, and the tax liabilities due to carry its burden. <u>See</u> MSJ Reply at 11. The United States contends: "In contrast, the Hopkins have not filed a valid return, nor offered competent summary judgment evidence to challenge the assessments and create a genuine issue of material fact, but, instead, have made only self-serving statements with their faulty, tax defie[s] belief that they had no taxable income to report." MSJ Reply at 11.

The United States replies to the Hopkins' objection to the Court granting summary judgment when there are still unresolved discovery issues, arguing that these issues "do[] not create a genuine issue of material fact to bar summary judgment." MSJ Reply at 11. Similarly, as to the Hopkins' contention that the Court should not grant summary judgment because the Hopkins can have witnesses testify in this civil case whom they were not allowed to present at the criminal trial, the United States responds that "this argument presents no fact issue to deprive the United States of its entitlement to summary judgment." MSJ Reply at 11-12. The United States asserts that the Hopkins' contention that their arguments are separate and distinct from the arguments made by the defendants in Lonsdale v. United States is without a sound basis in the law or the facts, as M. Hopkins made those same arguments at the Hopkins' criminal trial, and the distinctions that the Hopkins makes in their response to the Motion for Summary Judgment are not substantive legal, distinctions, but rather pedantic. See MSJ Reply at 12-13. The United States thus argues that there is no dispute as to any material fact in the case and that it is entitled to judgment based on the record as a matter of law. See MSJ Reply at 13.

On September 4, 2012, the Hopkins filed their Motion for Surreply, which the Court granted during the hearing on the Summary Judgment Motion, see Tr. at 7:23-9:19 (Court, Lena, M. Hopkins, S. Hopkins), and included the surreply within the Motion for Surreply. The Hopkins assert that the surreply is necessary, because the United States did not quickly respond to the Hopkins' requests to provide the Hopkins with the requested IRS employee information. Had they done so, the Hopkins note, the arguments set forth in the Motion for Surreply would have been asserted in their Hopkins' MSJ Response. See Motion for Surreply at 1-3. The Hopkins assert that the instructions provided to IRS employees regarding Form 1040 returns does not require them to mail a Form 1040 to taxpayers and does not state that taxpayers are required to file Forms 1040. See Motion for Surreply at 4. The Hopkins assert that the instructions do not so provide, because the Hopkins are not, pursuant to 26 U.S.C. § 6001, liable for the tax imposed. See Motion for Surreply at 4-5.

The Hopkins point out that the United States "once again can not argue the issues at hand without resorting to several pejoratives in the first sentence. The Government immediately mischaracterizes our beliefs." Motion for Surreply ¶ A, at 5-6. The Hopkins state:

> [P]lainly . . . . Compensation for Labor - any kind of labor exercised in a common occupation in one of the 50 contiguous states is "Exempt" from Federal taxation because it is earned while engaging

in a Constitutionally protected fundamental right to labor. The fundamental right to labor in an occupation of common right is not a Government granted privilege nor a revenue taxable activity, and therefore "Exempt."

Motion for Surreply ¶ A, at 6. The Hopkins assert that, although they have stated their position "in every conceivable way, what has been most conspicuous is how the Government consistently avoids the acknowledgement of the existence of a fundamental right to work as if it is the 3rd rail." Motion for Surreply ¶ A, at 6.

The Hopkins assert that the fundamental right to labor existed before the Sixteenth Amendment. See Motion for Surreply ¶ A, at 7 (citing Butchers' Union Co. v. Crescent City Co., 111 U.S. 746 (1884); Yick Wo v. Hopkins, 118 U.S. 356, 370 (1886)). The Hopkins contend that the Supreme Court affirmed the fundamental right to work after enactment of the Sixteenth Amendment in Smith v. Texas, 233 U.S. 630, 641 (1914), and Truax v. Raich, 239 U.S. 33 (1915). See Motion for Surreply ¶ A, at 9-10. The Hopkins argue that "neither the Constitution nor the 16th Amendment" can abrogate any of the fundamental rights that include the right to work." Motion for Surreply ¶ A, at 10 (citing Miranda v. Arizona, 384 U.S. 436, 491 (1966)("Where rights secured by the Constitution are invoked, there can be no rule making or legislation which would abrogate them.")). The Hopkins argue that the Sixteenth Amendment conferred upon Congress no new power of taxation, but relieved all income tax from the apportionment requirement. See Motion for Surreply ¶ A, at 11 (citing Brashaber v. Union Pac. R.R. Co., 240 U.S. at 1; Stanton v. Baltic Mining Co., 240 U.S. 103 (1916)). The Hopkins assert:

The Government (state) may not impose a fee or charge in order to enjoy any fundamental right. It is for this reason that compensation for labor is exempt, not the reason stated by [the United States] and which he tries over and over again to ascribe to us; that wages and compensation received from personal services are an equal exchange. I believe this to be true but don't rest my claim of "exemption" upon this fact, but instead upon the fundamental right issue.

Motion for Surreply ¶ A, at 11 (emphasis in original).

The Hopkins point out that the IRS manual directs IRS employees to follow Supreme Court decisions and that they are given the same weight as the IRC. See Motion for Surreply at 12. The Hopkins assert: "We believe the IRC

must accommodate Supreme Court decisions in the area of taxation for to violate these would render the Code unconstitutional which it is not; so an area of accommodation exists -- 'except as provided in this subtitle.'"  Motion for Surreply ¶ A, at 12-13.  The Hopkins contend that, to understand the IRC, one must begin with the code as enacted in 1939, which, even then, used an all-inclusive definition of income for "purposes of comprehensiveness and efficiency," but still provided for " 'exemptions and exclusions' from gross income . . . ."  Motion for Surreply ¶ A, at 13-14.  The Hopkins assert that these exemptions and exclusions continue to exist in 26 U.S.C. § 61(a), where, in the definition of what is gross income, the IRS states "except otherwise provided in this subtitle."  Motion for Surreply ¶ A, at 14 (quoting 26 U.S.C. § 61(a)).  The Hopkins contend that this language has existed in the tax code from the beginning to allow for the fundamental right to work to be exempt from taxation, but has been lost through the United States' "disparaging ancient Court decisions and Regulations, and instead [] provid[ing] Supreme Court cases overturning decisions we had relied upon . . . ."  Motion for Surreply ¶ A, at 14-15.

The Hopkins state that the United States "rightly makes the point that any income from whatever source is presumed to be income under 26 U.S.C. § 61 unless the taxpayer can prove that it is specifically exempt or excluded."  Motion for Surreply at 16 (emphasis in original).  They assert, however, "this we have done by the aforementioned discussion of fundamental rights and compensation through labor, and through [the 1939 tax code]; the entire compensation arising from an hourly rate received while working as an Emergency Room Physician."  Motion for Surreply ¶ A, at 16.  The Hopkins then point out that, rather than replying to the Hopkins' assertion of their income being exempt because they are exercising the fundamental right to work, the United States refers the Court to a litany of cases that merely dismiss taxpayer's lawsuits as tax defier arguments.  See Motion for Surreply ¶ A, at 17.  The Hopkins show that the facts underlying the cases cited by the United States are easily distinguishable, as none of the cited cases discusses the argument that labor from working at an hourly rate is exempt as exercising a fundamental right.  See Motion for Surreply ¶ A, at 17-18. The Hopkins contend, rather, that the United States' taxation of their fundamental right to work is more closely analogous to the Supreme Court's finding unconstitutional taxing the exercise of fundamental rights in Murdock v. Pennsylvania, 319 U.S. 105 (1943), Follett v. McCormick, 321 U.S. 573 (1944), and Grosjean v. Am. Press Co., 297 U.S. 233 (1936).  See Motion for Surreply ¶ A, at 19-21.

The Hopkins assert that this fundamental right to work being exempt from taxation "is the paramount issue that the Defendants were prohibited from

developing in the criminal trial and which the jury was not instructed to consider; the issue of exempt income that arises out of the exercise of a Fundamental Right." Motion for Surreply ¶ A, at 21-22. This exemption, the Hopkins contend, is the reason why res judicata does not apply to the United States' Motion for Summary Judgment. See Motion for Surreply ¶ A, at 23. In regard to res judicata's finality requirement, the Hopkins note that the "Court appointed appeals attorney . . . vehemently opposed raising any Constitutional issues on appeals for fear of being sanctioned and informed us that those issues were better left to [another] pleading." Motion for Surreply ¶ A, at 23-24.

The Hopkins then state:

> The remainder of the reply becomes [moot] due to Constitutional issues . . . if the Court accepts and affirms that the Hopkins have a fundamental right to work and that compensation for labor when exercising that right is exempt, and that the claim of exemption is not only valid but integrated within the code. The Hopkins have ample evidence of this long held belief as far back as April 15, 1997 which would encompass all years in dispute, and upon which they stringently adhered and acted upon in a good faith belief.

Motion for Surreply ¶ B, at 24. They reiterate their argument that the Form 1040 that they filed for 1996 indicating that they had zero income is a valid return under the law. See Motion for Surreply ¶ B, at 24-25. The Hopkins distinguish Bachmann v. C.I.R., 283 F. App'x 636 (10th Cir. 2008), and United States v. Rickman, to which the United States cites to support that the tax returns were invalid, by noting that, whereas the taxpayers in those cases did not offer valid justification for submitting a zero return, the Hopkins' argument that their income is exempt from taxation is a valid justification. See Motion for Surreply ¶ B, at 25-26. In paragraph C, the Hopkins contend that the letter they filed with the Court that accompanied their Form 1040 for tax year 1996 shows that they filed a Form 1040 for that year, regardless whether the United States contends that they did not. See Motion for Surreply ¶ C, at 28-29. The Hopkins also assert that they have not avoided liability, because "the Hopkins had only 'Exempt' income and could therefore have had no liability to avoid." Motion for Surreply ¶ D, at 29-30. The Hopkins note that the meetings to which the United States refers as tax defier meetings discussed tax issues, but also discussed the Declaration of Independence and the Constitution more broadly, encouraging people to research and confirm what was discussed to become more knowledgeable about the Constitution and the government overall. See Motion for Surreply ¶ E, at 30. The Hopkins state:

In the issue of $130,000 seized, the Hopkins are satisfied that the $130,000 was credited to TY 1996 although the Hopkins still hold to the belief that there should have been zero income as they attested to under penalty of perjury. Likewise, the $32,383 which was reported on the TY 1996 - 1040 Form which the united States claims as "invalid return;" the Hopkins are satisfied with its accounting also under the same qualification . . . .

Motion for Surreply ¶ F, at 31.

The Hopkins contend that taxing the Hopkins separately, each on one-hundred percent of their individual income and then again on fifty percent of the spouse's income, then converting that sum to judgment, "is a license to print money out of thin air and further obligate the Hopkins for a tax burden that should have never existed in the first place." Motion for Surreply ¶ G, at 32-33. The Hopkins take issue with the United States' contention that they had a full and fair hearing on the merits of their constitutional argument at their criminal trial. See Motion for Surreply ¶ H, at 33. The Hopkins note that they still believe the issues are not ripe for summary judgment, as they have not completed discovery and are awaiting the Court's ruling on their discovery motions. See Motion for Surreply ¶ I, at 34. The Hopkins concede that the issues regarding whether witnesses will be able to testify at trial should wait until the appropriate time as trial nears. See Motion for Surreply ¶ J, at 35. The Hopkins conclude by reiterating their position that "the government has no rebuttal to the simple claim or even an acknowledgment of a citizen's Constitutionally guaranteed fundamental right to work or whether the Government may tax that right or any right." See Motion for Surreply ¶ K, at 35-37.

At the Court's hearing on the Motion for Summary Judgment, Bayview Loan asked the Court to be excused from further pretrial proceedings, because it does not need to be involved in the case until after the foreclosure sale takes place and distribution of the proceeds is made. See Tr. at 3:2-22 (Court, Jaramillo). All parties still remaining in the case agreed to Bayview Loan's request to be excused from further pretrial proceedings, and the Court granted Bayview Loan's request, excused them from the hearing, and will excuse them from further pretrial proceedings. See Tr. at 5:23-6:15 (Court, Jaramillo, Lena, M. Hopkins, S. Hopkins). Before taking up the motion, the Court also granted the Hopkins' Motion for Telephonic Appearance Re: Motion Hearing on January 3, 2013, filed December 21, 2012 (Doc. 141), to which the United States did not object. See Tr. at 7:7-21 (Court, Lena). The Court then also granted the Hopkins' Motion

for Leave of Court to Reply to Plaintiffs' [sic] Reply to Hopkins' Response to Motion for Summary Judgment, filed September 4, 2012 (Doc. 106), and noted that it took the United States' response to the Hopkins' motion -- the United States' Response to Hopkins' Motion for Leave to File Sur-Reply, filed September 24, 2012 (Doc. 110) -- into account in its decision to grant the motion. See Tr. at 9:1-22, 11:12-22 (Court, M. Hopkins, S. Hopkins, Lena).

The United States stated:

> [T]he Constitution of the United States at Article I Section 8 allows Congress to lay and collect taxes and put simply, the Supreme Court, when it was looking at the Affordable Care Act recently [had] this to say . . . : "put simply, Congress may tax and spend. This grant gives the Federal Government considerable influence even in areas where it cannot directly regulate. The Government may enact a tax on an activity that it cannot authorize, forbid or otherwise control."

Tr. at 13:18-14:4 (Lena)(quoting Nat'l Fed'n of Indep. Bus. v. Sebelius, 132 S. Ct. 2566, 2579 (2012)). The United States noted that the particular argument that a person has a basis in his or her labor equal to the fair market value of the compensation received -- and the many variations of that argument -- in addition to having been rejected by multiple Circuit courts and district courts, "have officially been identified . . . as legally frivolous federal tax return positions for the purposes of the $5,000.00 frivolous tax return policy . . . [found at] 26 U.S.C. section 6702(A)." Tr. at 14:8-20 (Lena). The United States pointed out that, while the United States Constitution explicitly allows Congress to impose duties and taxes, the Constitution provides no exemptions or exceptions. See Tr. at 14:24-15:3 (Lena).

The United States referred the Court to federal cases from around the country that have rejected the argument that compensation from labor is exempt from wages. See Tr. at 15:6-21:24 (Lena)(citing Funk v. C.I.R., 687 F.2d 264 (8th Cir. 1982); Lonsdale v. C.I.R., 661 F.2d 71 (5th Cir. 1981); Lonsdale v. United States, 919 F.2d 1440 (10th Cir. 1990); United States v. Lawson, 670 F.2d 923 (10th Cir. 1982); United States v. Connor, 898 F.2d 942 (3d Cir. 1990); United States v. Francisco, 614 F.2d 617 (8th Cir. 1980); Broughton v. United States, 632 F.2d 706 (8th Cir. 1980); United States v. Russell, 585 F.2d 368 (8th Cir. 1978); Perkins v. C.I.R., 746 F.2d 1187 (6th Cir. 1984)). The United States pointed out that the United States Court of Appeals for the Fifth Circuit in Lonsdale v. C.I.R., and then subsequently the Tenth Circuit, in Lonsdale v. United States, rejected the same arguments from the plaintiff that the Hopkins are asserting in this case. See Tr. at 15:21-17:10 (Lena). The United States noted

that in <u>Funk v. C.I.R.</u>, where the taxpayers filed zero income tax returns, as the Hopkins did here, the United States Court of Appeals for the Eighth Circuit found that the tax returns were invalid and that the taxpayers' argument that their income from their labor was not taxable was without merit.  <u>See</u> Tr. at 18:14-19:10 (Lena).  The United States referred the Court to <u>United States v. Lawson</u>, wherein the Tenth Circuit held: "[T]he defendant[']s wages for personal services are income under the Internal Revenue Code.  The Congress has specifically provided that gross income means all income from whatever source derived, including, but not limited to, the following items. Number one, compensation for services, including fees, commissions, and similar items."  Tr. at 19:20-20:1 (Lena)(citing <u>United States v. Lawson</u>, 670 F.2d at 925).  The United States noted that, in <u>United States v. Connor</u>, the United States Court of Appeals for the Third Circuit stated that every court that has considered the issue has "unequivocally rejected the argument that wages are not income."  Tr. at 20:13-18 (Lena)(citing <u>United States v. Connor</u>, 898 F.2d at 943-44). The United States pointed out that in <u>United States v. Russell</u> the Eighth Circuit rejected the taxpayer's argument that it was unconstitutional to tax his common-law right to work.  <u>See</u> Tr. at 21:8-16 (Lena).

The Court stated that it believes the Hopkins' argument to be that there is an inherent conflict in Supreme Court precedent, with a handful of older cases saying that there is a protected, fundamental right to work, and the power to tax such a right in light of Justice Marshall's statement, in <u>McCulloch v. Maryland</u>, 17 U.S. 316 (1819), that a right to tax is a right to destroy.  The Court inquired of the United States whether any court has analyzed the issue whether taxing income is constitutional in light of these apparently conflicting constitutional propositions.  <u>See</u> Tr. at 21:25-23 (Court).   The United States responded that, in its experience, the courts have looked to the Constitution providing Congress the power to tax and thus the power to enact statutes to carry out that power, and to whether 26 U.S.C. §§ 61 and 62, providing for taxation of compensation for labor and services, is within Congress' power.  <u>See</u> Tr. at 22:16-23:16 (Lena).  The United States stated that it could not, however, provide the Court with a case on point at that time.  <u>See</u> Tr. at 23:19-25 (Lena).

The Court moved to the United States' argument that the Hopkins are precluded from asserting their arguments against the United States in this civil trial based on the res judicata doctrine, and asked the United States whether the issues in the case fall under res judicata or collateral estoppel.  <u>See</u> Tr. at 24:20-25:2 (Court).   The United States stated that it is asserting that, because it had to prove as an element of criminal tax evasion against the Hopkins that they owed tax, and a certain amount, the Hopkins are precluded from arguing contrary to the

jury's findings in their criminal case. See Tr. at 25:2-19 (Lena). The Court asked whether the United States contends that all issues material for summary judgment are precluded by res judicata or collateral estoppel, or whether it concedes that there are some issues as to which the United States must present undisputed evidence before the Court can grant summary judgment. See Tr. at 25:20-25 (Court). The United States responded that the Court must determine the actual amount owing, because, while the jury determined that the Hopkins owed a "substantial amount," the jury instructions did not require the jury to find the actual amount owing. Tr. at 26:1-27:11 (Court, Lena). The United States stated that the exhibits it submitted as attachments with its motion, in light of the Hopkins' responses, show that there is no genuine issue of material fact as to the amounts which the Hopkins owe that the United States seeks in the case. See Tr. at 27:12-20 (Lena).

The Court asked, in regard to finding that Shalom Enterprises and House of Royale were the Hopkins' nominees or alter-egos, whether the United States agreed that the criminal trial established that the Hopkins used nominees as part of the conspiracy, but not Shalom Enterprises and House of Royale particularly. See Tr. at 27:21-28:10 (Court). The United States responded that the Court is correct that the jury found only that the Hopkins used two entities as nominees, but pointed out that the Court has already entered default judgments against both Shalom Enterprises and House of Royale as defendants in this civil case. See Tr. at 28:18-29:20 (Court, Lena). The United States asserted that it is thus "on firm ground, particularly with this additional summary judgment evidence . . . [to prove] both of those specific entities were specifically used as nominees to gain title in the property and hold property to conceal income and assets from the Government by the Hopkins." Tr. at 29:21-30:5 (Lena). The United States noted that the Hopkins' criminal conviction is on appeal at the Tenth Circuit, that the Hopkins do not have the ability to mount an impermissible collateral attack on their criminal conviction, and that the Court also should not entertain an argument contrary to anything that was proved beyond a reasonable doubt in their criminal trial. See Tr. at 30:14-31:11 (Lena). In regards to the $130,000.00 tax lien, the United States pointed out that the Honorable William P. Johnson, United States District Judge for the District of New Mexico, stated in a decision from this district court that the federal tax liens arose against M. Hopkins on December 25, 2005, when tax assessments were made for tax years 1996 and 1997, and that the jury convicted M. Hopkins guilty for those tax years. See Tr. at 31:16-32:4 (Lena). In response to the Court's inquiry whether the United States had anything further to add on the motion, the United States referred the Court to the portions of the record that supported its factual assertions as to the amounts that the Hopkins owe. The United States asked the Court to pay particular attention

to the IRS' records of its investigation into the Hopkins' earnings, which it has submitted with the Motion for Summary Judgment, the declaration of Special Agent Jennifer and her exhibits, and the declaration of IRS agent Sandra Villareal. See Tr. at 32:16-34:12 (Lena).

The Court turned to the Hopkins for their response to the United States' Motion for Summary Judgment, and asked the Hopkins whether they were disputing the United States' factual assertions, including the amount of money that they owe or the propriety of the United States' liens, or whether they are seeking to make a bigger argument: that "there shouldn't be any assessment at all for wages and income." Tr. at 37:15-38:2 (Court). M. Hopkins responded that the Court is correct, and that they are making a bigger constitutional argument, a "legal argument that [the United States] cannot tax constitutionally [the] right to work, . . . that there's no gain, there's no profit, because [one is] making an equal exchange of [] work for a certain amount of income . . . ." Tr. at 38:3-11 (M. Hopkins, Court). M. Hopkins stated that his argument is that, under McCulloch v. Maryland, there are certain subjects over which the power of the state to tax cannot extend and that those subjects are exempt from taxation. This proposition, he asserted, "may almost be pronounced self-evident." Tr. at 38:21-39:3 (M. Hopkins). M. Hopkins conceded that "if we are not exempt everything Mr. Lena [attorney for the United States] has said is correct." Tr. at 39:4-6 (M. Hopkins). The Court responded whether it understood M. Hopkins correctly that the issue the Court needs to decide to enter summary judgment is whether McCulloch v. Maryland makes unconstitutional the IRS' position that wages are taxable income. See Tr. at 39:7-12 (Court). M. Hopkins responded that "I'm claiming that [the United States] ha[s] limitations and [] can tax [only] what [it] ha[s] authority over," and that the United States does not have the authority to tax the "fundamental right to work." Tr. at 39:13-24 (M. Hopkins). The Hopkins asserted that, "just because the 16 Amendment came along and said Congress shall have the power to lay and collect taxes on income from whatever source derived does not take away any fundamental rights . . . ." Tr. at 39:25-40:7 (M. Hopkins). The Hopkins stated that the IRC is written so that it taxes "anything and everything out there . . . . but then there are exemptions that are carved out." Tr. at 40:8-11 (M. Hopkins). The Hopkins asserted that, although "Congress may not have specifically mentioned a fundamental right to work" as being exempted under the IRC, because the Ninth Amendment to the Constitution "states even if those items are not specifically mentioned they still exist, and one of those items, the most valuable item you have is your property, your ability to contract, so you can provide for your family." Tr. at 41:7-12 (M. Hopkins). They further stated that this exemption under the Ninth Amendment for compensation for labor as property was a right exempt from taxation before the

Sixteenth Amendment, and "we still have it. Everybody in the world does." Tr. at 41:15-18 (M. Hopkins). The Hopkins asserted:

> [W]e were never served any document by the secretary requiring us nor by the district director requiring us to keep records, written statements, or make returns. We didn't file 1040 forms because we felt that the income that we had was exempt and we had filed affidavits to that effect multiple times and never got any response. And there is no specific regulation that makes us liable.

Tr. at 42:18-24 (M. Hopkins).

The Hopkins noted that the exemptions mentioned in 26 U.S.C. § 61 and in the Treasury Regulations, including 26 C.F.R. § 1.861, exempt income and assets from other sources, and "so the idea of an exemption and exempt income and exempt assets are still in the code over the years . . . . They can't do away with a fundamental right." Tr. at 42:25-43:18 (M. Hopkins). The gravamen of their argument, they asserted, is that, because the IRS is an agency that works under and pursuant to the IRC's statutory scheme, the IRS is invalid, and the assessments and determination of liability that the IRS made as to the Hopkins are also invalid. See Tr. at 43:19-44:8 (M. Hopkins). The Court responded:

> What I'm hearing is that we really don't need a trial on any issue, there's no genuine issue of material fact, but there's a legal issue that you're raising that you want the court to determine. Am I understanding your position correctly . . . . I'm not hearing there's really a dispute about the facts. What there's a dispute about is the validity of the assessment from a legal standpoint. Am I -- Is that a correct assessment of your argument?

Tr. at 44:9-19 (Court)(emphasis added). The Hopkins responded: "That's correct, Your Honor." Tr. at 44:20 (M. Hopkins). They asserted that the civil proceeding is therefore of a very different nature from the criminal proceeding against them. The Hopkins asserted that, while the proceedings involve the same parties, the United States only had to prove that a substantial amount was owing in the criminal trial; whereas, in the civil case, the Court may analyze whether the assessments made which caused the Hopkins to owe a substantial amount are constitutional. See Tr. at 44:20-45:2 (M. Hopkins). The Hopkins pointed out that, with regard to the "laundry list of cases" to which the United States refers in its argument, those cases have no application to the Hopkins' civil case unless the Court determines that, under the Constitution, the Hopkins are liable for tax on

M. Hopkins' income.  See Tr. At 45:19-46:4 (M. Hopkins).  In response to the Court's inquiry, the Hopkins agreed that foundational to any such liability is the Supreme Court cases, including McCulloch v. Maryland, which "broadly lay[] out that the Government state can't impose a tax on any fundamental right."  Tr. at 46:9-17 (M. Hopkins).  The Hopkins concluded that as "the summary judgment goes, I think I've laid the case out throughout all of our filings and . . . the road splits [whether] the Government indeed does have total authority over what they [claim to] have authority over, but if [the fundamental right to work is exempt,] they definitely don't."  Tr. at 46:18-22 (M. Hopkins).  In response to the Court's question whether there was anything that the M. Hopkins had to add, he responded that he did not, and that "I do agree that . . . this is [] more of a legal issue. I don't see a need for a jury trial . . . ."  Tr. at 48:3-5 (M. Hopkins).  S. Hopkins added that one "has to look at what the definition of income is, and income is clearly defined under Eisner v. Macomber[, 252 U.S. 189 (1920)] and [C.I.R. v. ]Glenshaw Glass[, 348 U.S. 426 (1955)].  It is not everything that comes in."  Tr. at 48:9-16 (S. Hopkins).  She asserted that "just because it is -- you can tax income from whatever source derived, the source derived isn't the issue.  The issue is [], is it taxable income?"  Tr. at 48:14-16 (S. Hopkins).

        The United States referred the Court to its United States' Response to Untimely Hopkins' Interrogatories 7-19, see Certificate of Service of United States' Response to Untimely Hopkins' Interrogatories 7-19, filed December 28, 2012 (Doc. 144), at page six, as an example of its contention that multiple courts have rejected the Hopkins' argument that, for tax purposes, there is a basis of zero in a person's labor.  See Tr. at 51:4-22 (Lena).  The United States asserted that "the taxpayer can only have a zero basis amount in his or her own labor because the [real] personal living expenses incurred to generate the labor is both non-capitalizable[,] and under 26 U.S.C. section 262[,] not deductible."  Tr. at 52:4-8 (Lena).  The United States contended that, while a person may have the fundamental right to work, once the person receives income for exercising that right to work, the IRS, pursuant to Congressional statutes, has the ability to tax that income.  See Tr. at 56:23-58 (Lena).  In response to the Court's question whether the United States can point the Court to a case that provides the proposition that once a person is paid for the right to work, the United States then has the ability to tax that payment, the United States referred the Court, once again, to United States v. Russell, and to the Circuit Court opinions that have looked to the Constitution, and held that "Congress has the ability to define compensation from services as income, [] taxable [under] sections 62, 63, [and section 61] of the Internal Revenue [Code]."  Tr. at 57:21-58:1 (Lena).  The United States concluded by stating:

> [T]he United States is merely asking for the ability to have the court grant summary judgment in its favor and [] ask the Court to reduce the Assessments to judgment for the tax years 96, 97, 99, 2000, and 2001, and [] ask that the court grant the United States' summary judgments such that it can foreclose its federal tax liens in all property and rights to property owned by the Hopkins.

Tr. at 61:20-62:2 (Lena).

       The Court stated that it would take the Motion for Summary Judgment under advisement, that it looks like the facts are largely undisputed, and that the issue appears to be legal rather than factual. <u>See</u> Tr. at 62:4-16 (Court). The Hopkins stated:

> In our response back -- it was number document 96 and it's our response to that motion for summary judgment, I would like you when you are considering this, please look at pages 9 and 10 and 11. We have been painted with this broad brush of having come down out the side of what [we] were [truly] saying in all of their separate arguments, and in that you will see what we believe -- [] [] what our beliefs are as opposed to what the U.S. Attorney is . . . saying [] we believe. I really believe that [it] could [] shed some light on us and the [stance] that we are taking. We do not believe those 11 stances that the U.S. Attorney keeps telling . . . telling you [that we believe], sir.

Tr. at 62:20-63:7 (S. Hopkins). The Court asked the United States whether, if the Court granted the summary judgment, the United States would at that point need a final judgment entered in the matter or whether the United States would need something further from the Court. <u>See</u> Tr. at 67:12-16 (Court). The United States responded that the Summary Judgment would allow the United States to go forward with foreclosure and the foreclosure sale, but Bayview Loan and the United States would then have to file a stipulation with the Court to memorialize their agreement as to the proceeds. <u>See</u> Tr. at 68:4-14 (Court, Lena).

SJ MOO at 21-51.

       After the Court filed the SJ MOO, the Hopkins' filed the Motion. <u>See</u> Motion at 1. In the Motion, the Hopkins' begins by asserting that, in the SJ MOO on page 100, the Court rules

that M. Hopkins is indebted to the United States in the amount of $732,811.61 "as of October 19, 2010, for the Federal income tax assessed against him for the tax years 1996, 1997, 1999, 2000, 2001, plus interest and all statutory additions provided by law until paid." Motion at 2. The Hopkins' note that, on page 4 of the United States' Complaint, filed May 13, 2011 (Doc. 1)("Complaint"), a table lists amount due through December 31, 2010, for tax years 1996, 1997, 1999, 2000, and 2001, for a total amount of $732,811.61. Motion at 2. The Hopkins' then state that, in the United States' Reply to Hopkins' Response to United States' Motion for Summary Judgment at 8, filed August 22, 2012 (Doc. 102)("MSJ Reply"), the United States responded to the Hopkins' allegation that M. Hopkins did not receive credit against the amount due by him as of October 19, 2010, for $130,000.00 that the Honorable Christina M. Armijo, United States District Judge for the District of New Mexico, held pursuant to a pretrial order and later attached after summary judgment in favor of the United States in interpleader case District of New Mexico v. Hopkins, No. 10-CV-00644 WJ/RLP, 2010 WL 5497195 (D.N.M. Dec. 17, 2010)(Armijo, J.). See Motion at 3. The Hopkins' contend that, when Judge Armijo ordered the $130,000.00 to be released to the IRS on December 17, 2010, M. Hopkins' tax liability for 1996 reduced -- because of that payment and other payments -- from $264,967.60, see Complaint at 4, to $143,085.59, see MSJ Reply at 8. See Motion at 3. The Hopkins' also assert that, in the conclusion to the MSJ Reply, the United States acknowledges that the total amount M. Hopkins owes in federal income tax, as of August 15, 2012, for 1996, 1997, 1999, 2000, and 2001, is $635,147.76. See Motion at 3-4 (citing MSJ Reply at 13). The MSJ Reply states, at page 13: "Therefore, the United States is entitled to summary judgment against Mark Hopkins for the federal income taxes assessed against

him for the tax years 1996, 1997, 1999, 2000 and 2001 in the amount of $635, 147.76 as of August 15, 2012, plus statutory additions and accruals until fully paid.". MSJ Reply at 13.

The Hopkins' argue that the Court erred in granting summary judgment in favor of the United States in the amount of $732,811.61, because it neglected to account for the $130,000.00 seized in the interpleader case, which should be credited against the amount M. Hopkins owes. See Motion at 4. The Hopkins' argue that the United States acknowledges this reduction as correct, by assessing a total amount doe of $635,147.76 against Mark Hopkins as of August 15, 2012. See Motion at 405. Accordingly, the Hopkins' ask that the Court modify the SJ MOO to reflect a total amount due for M. Hopkins of $635,147.76 as of August 15, 2012, for tax years 1996, 1997, 1999, 2000, and 2001, plus interest and other statutory additions provided by law until paid. See Motion at 5.

The United States responds in United States' Response to Hopkins' Motion for Relief From Order, filed March 13, 2013 (Doc. 172)("Response"). The United States responds that the Court committed no error, and correctly granted the United States summary judgment against M. Hopkins "such that he was indebted to the United States for $732,811.61 as of October 19, 2010." Response at 1. The United States contends that the Motion does not contradict that $732,811.61 is the total amount due and owing for M. Hopkins as of October 19, 2010. See Response at 1. The United States asserts that, after October 19, 2010, on December 27, 2010, the Internal Revenue Service ("IRS") applied $130,000.00 from an IRS levy, to M. Hopkins' tax liabilities for tax year 1996. See Response at 1. Accordingly, the United States asserts, M. Hopkins' tax liability for that year reduced to $142,085.59, as of August 15, 2012. See Response at 1. The United States

notes that, if the judgment specified M. Hopkins' liability as of August 15, 2012, the United States would be entitled to summary judgment against him in the amount of $635,147.76 as of August 15, 2012, plus statutory additions and accruals until fully paid.   See Response at 1.   The United States states: "While a judgment for that amount and date would be equally correct, it is not the amount and date pled by the United States in its motion for summary judgment."   Response at 1-2.   The United States argues that the Court's judgment is correct and need not be amended under rule 60(b) of the Federal Rules of Civil Procedure.   See Response at 2.   The United States argues that the "IRS is only entitled to the correct amount due and owing, and that amount was correctly recited as of October 19, 2010.   The balance due changes with daily compounded interest and with subsequent payments (if any)."   Response at 2.   The United States argues that the Court should not be expected to revise its judgment to match each change, and that, although the amount due and owing of $637,147.76 as of August 15, 2012, is correct, the amount that the SJ MOO stated of $732,811.61 as of October 19, 2010, is also correct, so the Court need not amend its correct judgment to reflect the change the Motion requests.   See Response at 2.

## LAW REGARDING RULE 60(b)

Rule 60(b) allows a court to relieve a party from a judgment or order for "mistake, inadvertence, surprise, or excusable neglect," Fed. R. Civ. P. 60(b)(1), or "any other reason that justifies relief," Fed. R. Civ. P. 60(b)(6).   "Rule 60(b) is an extraordinary procedure permitting the court that entered judgment to grant relief therefrom upon a showing of good cause within the rule."   Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc., 715 F.2d 1442, 1444 (10th Cir. 1983).   Rule 60(b) "is not a substitute for appeal and must be considered with the need for finality

of judgment." <u>Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.</u>, 715 F.2d at 1444

(citing <u>Brown v. McCormick</u>, 608 F.2d 410, 413 (10th Cir. 1979)). The rule was designed to

strike a "delicate balance" between respecting the finality of judgment and, at the same time,

recognizing the court's principal interest of executing justice. <u>Cessna Fin. Corp. v. Bielenberg

Masonry Contracting, Inc.</u>, 715 F.2d at 1444. Once a case is "unconditionally dismiss[ed],"[7] the

---

[7]Rule 41(a)(2), which governs all dismissals undertaken by way of a court order, grants courts discretion to condition dismissal "on terms that the court considers proper," Fed. R. Civ. P. 41(a)(2), formerly, "on terms and conditions as the court deems proper," <u>Smith v. Phillips</u>, 881 F.2d 902, 904-05 (10th Cir. 1989)(quoting Fed. R. Civ. P. 41(a)(2) (1988)). Such conditions "could include retention of some jurisdiction by the court." <u>Smith v. Phillips</u>, 881 F.2d at 905 (citing <u>McCall-Bey v. Franzen</u>, 777 F.2d 1178, 1188-90 (7th Cir. 1985)). The United States Court of Appeals for the Tenth Circuit has stated that, if the dismissal is pursuant to rule 40(a)(1)(A)(ii), undertaken without a court order, then the court "is powerless to condition dismissal . . . upon a retention of jurisdiction." 881 F.2d at 905. This rule is likely no longer true; the district court can probably attach a condition retaining jurisdiction, but only if the parties agree.

> Even when . . . the dismissal is pursuant to Rule 41(a)(1)(ii) [now rule 41(a)(1)(A)(ii)] (which does not by its terms empower a district court to attach conditions to the parties' stipulation of dismissal) we think the court is authorized to embody the settlement contract in its dismissal order or, what has the same effect, retain jurisdiction over the settlement contract) [sic] if the parties agree.

<u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. at 381-82.

The only factors counseling hesitation in endorsing the view that a court may retain jurisdiction of a case dismissed pursuant to rule 41(a)(1)(A) are: (i) the proclamation in <u>Kokkonen v. Guardian Life Insurance Co. of America</u> was dicta, and "[i]t is to the holdings of [the Supreme Court's] cases, rather than their dicta, that we must attend," 511 U.S. 375, 379; and (ii) the Court refers to "embody[ing] the settlement contract in its dismissal order," but rule 41(a)(1)(A) provides -- in its very title -- that it pertains to dismissals effectuated "*Without a Court Order*," Fed. R. Civ. P. 41(a)(1)(A) (emphasis in original). <u>Smith v. Phillips</u> must, however, be interpreted in light of the Supreme Court's subsequent decision in <u>Kokkonen v. Guardian Life Insurance Co. of America</u>, 511 U.S. 375 (1994), in which the Supreme Court held that a district court's ancillary jurisdiction does not extend to the post-dismissal enforcement of federal case settlement agreements, unless: (i) there is an independent basis of federal subject-matter jurisdiction to hear the claims; (ii) the court incorporated the terms of the settlement agreement into its order of

Court loses all jurisdiction over the case other than the ability to hear motions under rule 60(b). Smith v. Phillips, 881 F.2d 902, 904 (10th Cir. 1989)("We agree with the Seventh Circuit that '[a]n unconditional dismissal terminates federal jurisdiction except for the limited purpose of reopening and setting aside the judgment of dismissal within the scope allowed by [Fed. R. Civ. P.] 60(b)." (alterations in original)(quoting McCall-Bey v. Franzen, 777 F.2d 1178, 1190 (7th Cir. 1985))).

Motions to obtain relief from a judgment or order based on "mistake, inadvertence, surprise, or excusable neglect" must be brought "within a reasonable time . . . no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). See Blanchard v. Cortes-Molina, 453 F.3d 40, 44 (1st Cir. 2006)("[R]elief from judgment for reasons of 'mistake, inadvertence, surprise, or excusable neglect,' must be sought within one year of the judgment."). This deadline may not be extended and is not subject to the court's discretion. See Fed. R. Civ. P. 6(b)(2) ("A court must not extend the time to act under Rules 50(b) and (d), 52(b), 59(b), (d), and (e), and 60(b)." (emphasis added)). The pendency of an appeal does not toll the time requirement for pursuing a motion under rule 60(b). See Fed. R. Civ. P. 60(c)(1); Griffin v. Reid, 259 F. App'x 121, 123 (10th Cir. 2007)(unpublished)[8]; Tool Box, Inc. v. Ogden City

---

dismissal; or (iii) the court includes a term "'retaining jurisdiction'" in its order of dismissal. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. at 381. That decision continues to permit district courts to condition dismissals under rule 41(a)(2), see 511 U.S. at 381, and appears to have no bearing on courts' power to reopen cases pursuant to rule 60(b), see 511 U.S. at 378 (noting, without opining on, the practice of "[s]ome Courts of Appeals" to "reopen[ ] . . . dismissed suit[s] by reason of breach of the agreement that was the basis for dismissal").

[8]Griffin v. Reid is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").

Corp., 419 F.3d 1084, 1088 (10th Cir. 2005)("[A]n appeal does not toll or extend the one-year

time limit of Rule 60(b)."). No time limit applies to rule 60(b)(6), other than that the motion be

made within a reasonable time. See Fed. R. Civ. P. 60(c)(1).

### 1.     Rule 60(b)(1).

The Tenth Circuit uses three factors in determining whether a judgment may be set aside

in accordance with rule 60(b)(1): (i) whether the moving party's culpable conduct caused the

default; (ii) whether the moving party has a meritorious defense; and (iii) whether setting aside the

judgment will prejudice the nonmoving party. See United States v. Timers Preserve, 999 F.2d

452, 454 (10th Cir. 1993). Under some circumstances, a party can rely on rule 60(b)(1) for a

mistake by their attorney or when their attorney acted without their authority. See Yapp v. Excel

Corp., 186 F.3d 1222, 1231 (10th Cir. 1999)("Rule 60(b)(1) motions premised upon mistake are

---

The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have
> generally determined that citation to unpublished opinions is not favored.
> However, if an unpublished opinion or order and judgment has persuasive value
> with respect to a material issue in a case and would assist the court in its disposition,
> we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court concludes that Griffin
v. Reid has persuasive value with respect to a material issue, and will assist the Court in its
disposition of this Memorandum Opinion. The Court makes similar findings in this
Memorandum Opinion regarding Argota v. Miller, 424 F. App'x 769 (10th Cir. 2011), McKay v.
United States, 207 F. App'x 892 (10th Cir. 2006), Pyeatt v. Does, 19 F. App'x 785 (10th Cir.
2001), United States v. McMahan, 8 F. App'x 272 (10th Cir. 2001), Chavez v. Primus Auto. Fin.
Servs., 125 F.3d 861, 1997 WL 634090 (10th Cir. 1997), and Beetle Plastics, Inc. v. United Ass'n
of Journeymen & Apprentices of Plumbing & Pipefitting Indus., 97 F.3d 1464, 1996 WL 531924
(10th Cir. Sept. 19, 1996).

intended to provide relief to a party . . . when the party has made an excusable litigation mistake or an attorney has acted without authority . . . .").   Mistake in this context entails either acting without the client's consent or making a litigation mistake, such as failing to file or comply with deadlines.   See Yapp v. Excel Corp., 186 F.3d at 1231.   If the alleged incident entails a mistake, then it must be excusable, meaning that the party was not at fault.   See Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 394 (1993)("This leaves, of course, the Rule's requirement that the party's neglect be 'excusable.'");   Cashner v. Freedom Stores, Inc., 98 F.3d 572, 577 (10th Cir. 1996)("If the mistake alleged is a party's litigation mistake, we have declined to grant relief under Rule 60(b)(1) when the mistake was the result of a deliberate and counseled decision by the party.");   Pelican Prod. Corp. v. Marino, 893 F.2d 1143, 1146 (10th Cir. 1990)(holding attorney carelessness is not a basis for relief under Rule 60(b)(1)).

Courts will not grant relief when the mistake of which the movant complains is the result of an attorney's deliberate litigation tactics.   See Cashner v. Freedom Stores, Inc., 98 F.3d at 577. This rule exists because a party

> voluntarily chose [the] attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.

Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. at 397 (internal quotation marks omitted)(quoting Link v. Wabash R.R., 370 U.S. 626, 633-34 (1962)).   The Tenth Circuit has held that there is nothing "novel" about "the harshness of penalizing [a client] for his attorney's

conduct" and has noted that those "who act through agents are customarily bound," even though, when "an attorney is poorly prepared to cross-examine an expert witness, the client suffers the consequences." Gripe v. City of Enid, 312 F.3d 1184, 1189 (10th Cir. 2002). The Court has previously stated:

> There is a tension between how the law treats attorney actions that are without authority, thus permitting relief under rule 60(b), and how the law treats those attorney actions which are inexcusable litigations decisions, thus failing to qualify for relief; although the distinction between those actions may not always be logical, it is well established.

Wilson v. Jara, No. CIV 10-0797 JB/WPL, 2012 WL 1684595, at *7 (D.N.M. May 10, 2012)(Browning, J.).[9]

_____

[9]The Supreme Court has recognized that individuals must be "held accountable for the acts and omissions of their chosen counsel," and that the "proper focus is upon whether the neglect of respondents and their counsel was excusable." Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship, 507 U.S. at 397 (emphasis in original). At the same time, the Tenth Circuit has held that, when counsel acts without authority, rule 60(b)(1) provides relief from judgment. See Cashner v. Freedom Stores, Inc., 98 F.3d at 576 ("[A]s a general proposition, the 'mistake' provision in Rule 60(b)(1) provides for the reconsideration of judgment only where . . . an attorney in the litigation has acted without authority from a party . . . .")(quoting Fed. R. Civ P. 60(b)(1). "There is a tension between these decisions, because, ordinarily, a client will not authorize his or her attorney to act in a negligent manner or to make a mistake." Wilson v. Jara, No. CIV 10-0797 JB/WPL, 2012 WL 1684595, at *7 n.7. When the client acknowledges that he or she has hired the attorney, there is a difference between decisions which terminate the litigation, such as settlement or a stipulation of dismissal, and other litigation decisions, because decisions to terminate the litigation are ordinarily left to the client. See Chavez v. Primus Auto. Fin. Servs., 125 F.3d 861, 1997 WL 634090, at *4-5 (10th Cir. 1997)(unpublished table decision)(citing Navajo Tribe of Indians v. Hanosh Chevrolet-Buick, Inc., 1988-NMSC-010 ¶ 3, 749 P.2d 90, 92; Bolles v. Smith, 1979-NMSC-019 ¶ 11, 526, 591 P.2d 278, 280). "Otherwise the Court has difficulty explaining attorney decisions which are made without authority and attorney decisions for which it is acceptable that the client suffer the consequences." Wilson v. Jara, No. CIV 10-0797 JB/WPL, 2012 WL 1684595, at *7 n.7.

In Chavez v. Primus Automotive Financial Services, the Tenth Circuit recognized that "the mere employment of an attorney does not give him the actual, implied or apparent authority to

-50-

compromise his client's case."   1997 WL 634090, at *4.   Few Tenth Circuit cases analyze whether an attorney has acted without authority.   The cases in which the Tenth Circuit has found a lack of authority appear to fall into two categories: (i) cases in which the attorney entered an appearance without the client's knowledge, see FDIC v. Oaklawn Apts., 959 F.2d 170, 175-76 (10th Cir. 1992)(finding that there were factual issues which the district court needed to resolve where "[t]here is nothing in the record indicating when Appellants became aware of the lawsuit and of Newcombe's purported representation"); and (ii) cases in which the attorney's actions terminate the litigation, see Thomas v. Colo. Trust Deed Funds, Inc., 366 F.2d 136, 139-40 (10th Cir. 1966)(finding that, as to one of the plaintiffs, "the record shows that he did not participate in the transactions and negotiations with the S.E.C. and did not consent to the execution of the stipulation of the judgment"); Cashner v. Freedom Stores, Inc., 98 F.3d at 577 (citing with approval Surety Ins. Co. of Cal. v. Williams, 729 F.2d 581, 582-83 (8th Cir. 1984), which held that a "judgment entered upon an agreement by the attorney may be set aside on affirmative proof that the attorney had no right to consent to its entry").   Because decisions that terminate the litigation are ordinarily the client's prerogative, those decisions fit more squarely within rule 60(b)(1)'s "lack of consent" prong.

Decisions where the purported client is unaware of the litigation, or of the attorney's attempt to act on his or her behalf, would also fit within rule 60(b)(1)'s "lack of consent" prong, because an individual has the right to choose his or her own attorney, or to decide whether he or she wishes to have any attorney.   Other litigation decisions are made jointly or are within the attorney's control, see Model Code of Prof'l Conduct R. 1.2 cmt. 1 (2011)("With respect to the means by which the client's objectives are to be pursued, the lawyer shall consult with the client . . . and may take such action as is impliedly authorized to carry out the representation."); Pittman ex rel. Sykes v. Franklin, 282 F. App'x 418, 427 n.6 (6th Cir. 2008)(unpublished)("[T]he decision to allege comparative fault as an affirmative defense falls within a narrow band of circumstances in which an attorney may act without consulting his or her client."), and, thus, to give final judgments meaning and allow cases to terminate, it is logical that those decisions must fall within the "excusable litigation mistake" prong, or be based on a substantive mistake of law or fact.

Although the Tenth Circuit does not appear to have expressed its views on where the line is drawn between attorneys acting without consent and litigation mistakes, or acknowledged the tension between these two categories, the Court concludes that the appropriate division is, when the client is aware that the attorney is acting on his or her behalf, between decisions which dispose of the case and ordinarily require client consent, and other routine attorney decisions which take place over the course of the case.   The Court also notes that rules of professional conduct require, "[i]n a criminal case," for a lawyer to "abide by the client's decision, after consultation with the lawyer, as to the plea to be entered, whether to waive a jury trial and whether the client will testify." Model Rules of Prof'l Conduct R. 1.2(a).   While a decision on the plea to be entered in a criminal case is comparable to whether to settle a civil case, the Court has not located any decisions permitting rule 60(b) relief when a civil attorney waives his or her client's right to jury trial.   One unpublished decision from the United States Court of Appeals for the Fourth Circuit discusses

## 2.    **Rule 60(b)(6).**

Rule 60(b)(6) provides that a court may relieve a party from final judgment, order, or proceeding for "any other reason that justifies relief."   Fed. R. Civ. P. 60(b)(6).   No time limit applies to rule 60(b)(6), save that the motion be made within a reasonable time.   <u>See</u> Fed. R. Civ. P. 60(c)(1).   "Thus, to the extent it is applicable, clause (6) appears to offer a means of escape from the one-year limit that applies to motions under clauses (1), (2), and (3)."   11 Charles Alan Wright, Arthur R. Miller & M. Kane, <u>Federal Practice & Procedure</u> § 2864, at 490 (2d ed. 2012). In <u>Pioneer Investment Services Co. v. Brunswick Associates Ltd.</u>, the Supreme Court reasoned that, to avoid abrogating the one-year time limit for rule 60(b)(1) to (3), rule 60(b)'s "provisions are mutually exclusive, and thus a party who failed to take timely action due to 'excusable neglect' may not seek relief more than a year after the judgment by resorting to subsection (6)."   507 U.S. at 393 (citing <u>Liljeberg v. Health Services Acquisition Corp.</u>, 486 U.S. 847, 863 & n.11 (1988)). "If the reasons offered for relief from judgment could be considered under one of the more specific clauses of Rule 60(b)(1)-(5), those reasons will not justify relief under Rule 60(b)(6)."   12 James Wm. Moore et al., <u>Moore's Federal Practice, Civil</u> § 60.48[2], at 60-182 (3d ed. 2013).   <u>Accord</u> <u>Liljeberg v. Health Servs. Acquisition Corp.</u>, 486 U.S. 847, 863 n.11 (1988)("This logic, of course, extends beyond clause (1) and suggests that clause (6) and clauses (1) through (5) are mutually exclusive.").

---

briefly a scenario where, without resolving the issue's merits, a criminal defendant raised through a rule 60(b) motion in a habeas preceding that "his trial counsel had prevented him from testifying in his defense."   <u>United States v. McMahan</u>, 8 F. App'x 272, 274 (4th Cir. 2001)(unpublished).

Rule 60(b)(6) is a "grand reservoir of equitable power to do justice in a particular case."

Van Skiver v. United States, 952 F.2d 1241, 1244 (10th Cir. 1991)(internal quotation marks omitted). "The Rule does not particularize the factors that justify relief, but we have previously noted that it provides courts with authority 'adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice,' while also cautioning that it should only be applied in 'extraordinary circumstances.'" Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. at 863 (quoting Klapprott v. United States, 335 U.S. 601, 614-15 (1949)). Generally, the situation must be one beyond the control of the party requesting relief under rule 60(b)(6) to warrant relief. See Ackermann v. United States, 340 U.S. 193, 202 (1950)("The comparison [of prior precedent] strikingly points up the difference between no choice and choice; imprisonment and freedom of action; no trial and trial; no counsel and counsel; no chance for negligence and inexcusable negligence. Subsection 6 of Rule 60(b) has no application to the situation of petitioner."). Legal error that provides a basis for relief under rule 60(b)(6) must be extraordinary, as the Tenth Circuit discussed in Van Skiver v. United States:

> The kind of legal error that provides the extraordinary circumstances justifying relief under Rule 60(b)(6) is illustrated by Pierce [v. Cook & Co., 518 F.2d 720, 722 (10th Cir. 1975)(en banc)]. In that case, this court granted relief under 60(b)(6) when there had been a post-judgment change in the law "arising out of the same accident as that in which the plaintiffs . . . were injured." Pierce, 518 F.2d at 723. However, when the post-judgment change in the law did not arise in a related case, we have held that "[a] change in the law or in the judicial view of an established rule of law" does not justify relief under Rule 60(b)(6). Collins v. City of Wichita, 254 F.2d 837, 839 (10th Cir. 1958).

Van Skiver v. United States, 952 F.2d at 1244-45.

"Courts have found few narrowly-defined situations that clearly present 'other reasons

justifying relief.'"  Wright et al., supra, § 2864, at 483.   The Supreme Court expounded:

> To justify relief under subsection (6), a party must show "extraordinary circumstances" suggesting that the party is faultless in the delay.   If a party is partly to blame for the delay, relief must be sought within one year under subsection (1) and the party's neglect must be excusable.   In Klapprott [v. United States, 335 U.S. 601 (1949)], for example, the petitioner had been effectively prevented from taking a timely appeal of a judgment by incarceration, ill health, and other factors beyond his reasonable control.   Four years after a default judgment had been entered against him, he sought to reopen the matter under Rule 60(b) and was permitted to do so.

Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd., 507 U.S. at 393 (citing Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 863 & n.11; Ackerman v. United States, 340 U.S. at 197-200; Klapprott v. United States, 335 U.S. at 613-14).   See Gonzalez v. Crosby, 545 U.S. 524, 535 (2005)("[O]ur cases have required a movant seeking relief under Rule 60(b)(6) to show 'extraordinary circumstances' justifying the reopening of a final judgment")(quoting Fed. R. Civ. P. 60(b))).   In Gonzalez v. Crosby, the Supreme Court found a change in the law during the pendency of a habeas petition was not an extraordinary circumstance.   See 545 U.S. at 537.

When the Supreme Court first addressed rule 60(b)(6) a year after it was introduced to the federal rules, while the Justices were sharply divided on other issues, no dispute arose from Justice Black's statement: "[O]f course, the one year limitation would control if no more than 'neglect' was disclosed by the petition.   In that event the petitioner could not avail himself of the broad 'any other reason' clause of 60(b)."   Klapprott v. United States, 335 U.S. at 613 (quoting Fed. R. Civ. P. 60(b)).   See Wright et al., supra, § 2864, at 493.

Examples where courts apply rule 60(b)(6) include "settlement agreements when one party fails to comply" and courts use the rule "to return the parties to the status quo," or in cases where

fraud is used by a "party's own counsel, by a codefendant, or by a third-party witness," which does

not fit within rule 60(b)(3)'s provision for fraud by an adverse party.   Wright et al., <u>supra</u>, § 2864,

at 485, 487.   The most common application is to grant relief "when the losing party fails to receive

notice of the entry of judgment in time to file an appeal."[10]   Wright et al., <u>supra</u>, § 2864, at 488.

When moving for relief pursuant to rule 60(b)(6), it is not enough to argue the same issues that a

court has already addressed.   <u>See</u> <u>Pyeatt v. Does</u>, 19 F. App'x 785, 788 (10th Cir.

2001)(unpublished)("[A] motion to reconsider [that] simply reasserts information considered by

the district court in its initial determination . . . does not meet the extraordinary circumstances

standard required for Rule 60(b)(6) relief.").

## <u>ANALYSIS</u>

The Court denied the Motion.   Relief under rule 60(b) "is extraordinary and may only be

granted in exceptional circumstances."   <u>Bud Brooks Trucking, Inc. v. Bill Hodges Trucking Co.</u>,

909 F.2d 1437, 1440 (10th Cir. 1990).   <u>See also</u> <u>Cashner v. Freedom Stores, Inc.</u>, 98 F.3d 572,

576 (10th Cir. 1996)(quotation omitted).   The Hopkins' do not specify under which rule 60(b)

---

[10]Professors Charles Wright and Arthur Miller note that

[m]ost of those cases, however, predate the 1991 amendment to Appellate Rule 4(a)(6), which now provides relief from the strict appellate filing rule if the party did not learn of the entry of the judgment.   In light of that change, most courts have held that resort to Rule 60(b) as a means of extending the appeal time no longer is appropriate, although the Rule 60(b) approach is still utilized in some courts, primarily in the Sixth Circuit.

Wright et al., <u>supra</u>, § 2864, at 489-90 (citations omitted).   <u>See</u> <u>Clark v. Lavallie</u>, 204 F.3d 1038, 1041 (10th Cir. 2000)("Rules 4(a)(6) and 77(d) 'preclude[] the use of Fed. R. Civ. P. 60(b)(6) to cure problems of lack of notice.'" (citations omitted)).

subsection they brings their Motion, but, as they asserts that the Court made a mistake in its SJ MOO, the Court considers their Motion in light of the two rule 60(b) sections addressing relief because of mistake -- rule 60(b)(1), and rule 60(b)(6). Under rule 60(b)(1), relief is available only "(1) when the party has made an excusable litigation mistake or an attorney in the litigation has acted without authority; or (2) when the judge has made a substantive mistake of law or fact in the final judgment or order." Yapp v. Excel Corp., 186 F.3d at 1231. Under rule 60(b)(6), relief is available "only if we find a complete absence of a reasonable basis and are certain that the . . . decision is wrong." Yapp v. Excel Corp., 186 F.3d at 1232. See also State Bank of S. Utah v. Gledhill (In re Gledhill), 76 F.3d 1070, 1080 (10th Cir. 1996). Both parties agree that the amount due and owing as of August 15, 2012, is $637,147.76, and that the amount stated in the SJ MOO of $732,811.61 as of October 19, 2010, is also correct as of October 19, 2010. Because both parties agree that, as of October 19, 2010, the amount due and owing is $732,811.61, the Court need not amend its judgment to reflect the change the Motion requests. As the United States notes, the "balance due changes with daily compounded interest and with subsequent payments (if any)." Response at 2. Rule 60(b) does not permit relief from judgment simply because the Court does not update its judgment to match each change. Accordingly, the Court denied the Motion.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Kenneth J. Gonzalez
  United States Attorney
Albuquerque, New Mexico

--and--

Manuel Paul Lena
Herbert W. Linder
United States Department of Justice, Tax Division
Dallas, TX

    *Attorneys for the Plaintiff*

Mark E. Hopkins
Federal Correctional Institution La Tuna
Anthony, Texas

    *Defendant pro se*

Sharon J. Hopkins
Federal Correctional Institution Phoenix
Phoenix, Arizona

    *Defendant pro se*